**Mark Rodney FREEMAN, Appellant,**

v.

**STATE of Texas, Appellee.**

**No. 11–83–300–CR.**

Court of Appeals of Texas, Eastland.

April 18, 1985.

Rehearing Denied April 18, 1985.

Archibald C. McColl, III, David W. Coody, S. Michael McColloch, Bruner, McColl, McColloch & McCurley, Dallas, for appellant.

Henry Wade, Criminal Dist. Atty., Dallas, for appellee.

## ON MOTION FOR REHEARING

McCLOUD, Chief Justice.

We withdraw our opinion dated March 14, 1985, and substitute the following.

The jury convicted appellant of murder and assessed his punishment at confinement in the Texas Department of Corrections for a term of fifty years.

The sufficiency of the evidence is not challenged. The record reflects that the appellant and Guadalupe Waddell, wife of the murdered victim Steven Mitchell Waddell, were "dating". Appellant and Guadalupe agreed that Guadalupe would lure her husband into the Sonic Drive-In, where she worked. At the prearranged time, appellant would appear and pretend that he was robbing the drive-in. During the feigned robbery, appellant would shoot and kill the victim. Appellant and Guadalupe carried out their scheme on April 17, 1983, when appellant shot and killed Steven Mitchell Waddell. As he left the drive-in, appellant took the money from the cash register so that it would appear to be a robbery and not the planned murder of his lover's husband. The next day appellant left Dallas and drove to Pulaski, Tennessee.

Following the murder, the investigating police officers learned from Guadalupe Waddell the scheme that she and appellant had entered into, and that appellant was probably in his hometown of Pulaski. On April 20, 1983, appellant was arrested in Pulaski, pursuant to a teletyped arrest warrant, by Officer Jernigan, a criminal investigator with the Pulaski Sheriff's Department. At the time of the arrest, Jernigan testified that he read to appellant his "Miranda" warnings.[1] That afternoon, Officer Jernigan took the appellant before a magistrate and a Tennessee attorney was appointed to represent the appellant. On April 21, 1983, Harroll Rhoads, a Grand Prairie police officer who had been assigned to investigate the case, flew to Pulaski. That night, Officer Rhoads secured a written statement from appellant confessing that he had killed the victim as he and Guadalupe had previously planned. The confession was introduced in evidence over the objection of appellant.

Appellant argues, in his first ground of error, that his written confession was involuntary because it was induced by a promise that appellant would not be charged with capital murder.

The trial court conducted a pretrial hearing in the absence of the jury to determine whether the statement was made under voluntary conditions. After hearing the evidence, the court entered an order finding that the statement was voluntarily made, along with specific findings of fact. Additional evidence on the voluntariness of the confession was submitted to the jury who was instructed that unless the jury

1. *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

believed beyond a reasonable doubt that the statement was voluntarily made, the jury should not consider the statement for any purpose. See TEX.CODE CRIM.PRO. ANN. art. 38.22 (Vernon 1979 and Vernon Supp.1985). Appellant argues that the statement was inadmissible as a matter of law.

█ In a pretrial hearing to determine the voluntariness of a confession, the trial court is the sole judge of the weight of the evidence and the credibility of the witnesses. *Hawkins v. State*, 613 S.W.2d 720 (Tex.Cr.App.1981).

Officer Rhoads testified that when he first talked to the appellant, and later to the appellant's attorney, it was apparent that appellant was concerned about getting the death penalty. Appellant first brought up the subject. Appellant told Rhoads that he was afraid to die and he did not want to get the death penalty. Appellant's attorney told Rhoads that if the attorney knew that the authorities would not file a capital murder case, then they might discuss whether or not the appellant would make a statement. Officer Rhoads told appellant's attorney that he would have to confer with his people in Grand Prairie. Rhoads called Sergeant Dale Phifer and told him what had occurred. Phifer told Rhoads that he would talk to the legal advisors and call him back. Phifer returned Rhoads call and told him that since the appellant was the first person to bring up the capital punishment issue, Rhoads could say that a capital murder charge would not be filed.

An Assistant District Attorney, Norman Kinne, testified that he talked with certain Grand Prairie officers regarding the shooting after the officers had gotten a statement from Guadalupe Waddell. The officers were talking about the possibility of filing capital murder charges in the case, but Kinne told the officers, including Sergeant Phifer, that he would not accept a capital murder charge.[2]

After Officer Rhoads talked to Sergeant Phifer, Rhoads prepared an affidavit which stated that the appellant:

> Will not be prosecuted as Section 19.03, Capital Murder, as outlined in the Texas Penal Code. That said cause will be filed as Section 19.02, Murder, as outlined in the Texas Penal Code.

Following Officer Rhoads' explanation of the affidavit and the difference in "murder" and "capital murder", the appellant gave Rhoads the written confession that is under attack.

Appellant argues that the statement was inadmissible under the rule applied in *Hardesty v. State*, 667 S.W.2d 130 (Tex.Cr.App. 1984); *Walker v. State*, 626 S.W.2d 777 (Tex.Cr.App.1982); *Washington v. State*, 582 S.W.2d 122 (Tex.Cr.App.1979); and *Fisher v. State*, 379 S.W.2d 900 (Tex.Cr. App.1964). Specifically, appellant relies upon the following language:

> A confession obtained as a result of a benefit positively being promised to the defendant made or sanctioned by one in authority and of such character as would be likely to influence a defendant to speak untruthfully is not admissible.

*Walker v. State*, supra.

The cases are distinguishable. In each case cited, where the court held that the statement was inadmissible, the promised benefit was conditional. In the cases urged by appellant, it is undisputed that a benefit was promised in exchange for the defendant's statement. The key word in each case is "if". The defendant would receive a benefit "if" the defendant would give a statement. In *Hardesty*, a detective with the Irving Police Department testified:

> Q  Didn't you say that you told him *if* he signed the statement you would only file one case on him?
>
> A  Yes, sir. (Emphasis added)

---

**2.** The State says that it was not a capital murder case because appellant did not intentionally commit murder in the course of committing robbery. He intentionally committed murder by shooting his girlfriend's husband and then committed a robbery to disguise his motive. See TEX.PENAL CODE ANN. sec. 19.03(a)(2) (Vernon Supp.1985).

The court noted that the detective, "pursuant to their agreement," did not file two other cases. In holding that a statement covering an offense committed in Grand Prairie was admissible, the court in *Hardesty* stated:

Nor did Roberts make his end of the "bargain" contingent upon appellant's making any inculpatory statement about offenses committed outside Irving. Accordingly, appellant's written statement admitting to a burglary committed in Grand Prairie (State's Exhibit No. 2) could not have resulted from the promise of benefit made by Detective Roberts.

The "deal" in *Walker* was "if" the defendant "cleared up" all of his burglaries and signed the confession he would not get more than ten years. The defendant in *Washington* was told that "if" he told the truth on the polygraph test, then any confession he made in court would be disregarded, and his conviction would be set aside. In *Fisher*, the employer told the employee that he would help pay for the missing tires "if" the employee would just tell the employer that the employee had taken the tires.

The early case of *Searcy v. State*, 28 Tex.Ct.App. 513, 13 S.W. 782 (1890), cited in *Fisher*, held that a confession was inadmissible where the sheriff told the defendant "if" the defendant would tell him all about it, the sheriff would do all he could for the defendant.

The court in *Roberts v. State*, 545 S.W.2d 157 (Tex.Cr.App.1977) said:

A threat made by police officers to arrest or punish a close relative or a promise to free a relative of a prisoner *in exchange for a confession* may render the prisoner's subsequently made confession inadmissible in evidence. (Emphasis added)

In the instant case, the testimony of Officer Rhoads unmistakably shows that the promised "benefit" (appellant would be charged with murder and not capital murder) was an unconditional promise. The benefit was not promised "if" the appellant signed the confession. Officer Rhoads tes-

tified that the affidavit was not given in exchange for any action on the part of the appellant. He stated that the only purpose of the affidavit was to assure the appellant that the State would not file a capital murder charge. Rhoads testified that he understood that after he made the affidavit, the appellant might or might not desire to give a statement. The benefit was not conditioned on the appellant giving a statement.

It is apparent from the cases urged by appellant that the promised benefit to the accused is a benefit offered in exchange for a statement from the accused. Appellant testified that he and Officer Rhoads made a "deal" that if he would give a statement, he would not be prosecuted for capital murder. The trial court was not bound by appellant's version of what occurred. Officer Rhoads testified that no "deal" or "agreement" was made. He testified that his promise to the appellant that he would not be prosecuted for capital murder was not in "exchange" for appellant's promise to make the statement. The facts were in dispute regarding the existence of an "agreement", "exchange", or "bargain", and the trial court resolved the issue against the appellant. The statement was not inadmissible as a matter of law. Appellant's first ground of error is overruled.

■ Next, appellant contends that the evidence establishes that his confession was obtained in violation of his Fifth Amendment right to have counsel present during custodial interrogation.

Appellant's appointed Tennessee attorney was not present when appellant was interrogated and Officer Rhoads obtained appellant's written statement.

When he first talked to appellant, Rhoads testified that he gave appellant his *Miranda* warnings. Rhoads told appellant that he had a right to have a lawyer present prior to and during any questioning. Rhoads told appellant some of the facts that Rhoads had learned about the shooting. After he finished talking, Rhoads asked appellant if appellant wanted

to talk to him about it. Appellant stated that he would like to talk to Rhoads, but that he wanted to see his attorney. At that point, Rhoads stopped the interview. Appellant's Tennessee attorney was located and the attorney came to the sheriff's office and talked with appellant and Rhoads. Following this conversation, Rhoads called Sergeant Phifer in Grand Prairie and received authorization to tell the appellant that a capital murder case would not be filed. After appellant's attorney talked to Rhoads about the capital punishment issue and before Sergeant Phifer returned Rhoads' call, appellant's attorney left the sheriff's office. Appellant's attorney told Rhoads that he would talk to the district attorney's office in Dallas the next morning regarding the capital murder charge. Before leaving, the attorney told Rhoads and Officer Jernigan, the Tennessee officer who had been assisting Rhoads with the case, that he had told appellant not to talk to them.

Shortly after Rhoads talked to Sergeant Phifer, Jernigan came into the room and told Rhoads that appellant wanted to talk to him. Officer Rhoads testified that he asked appellant if he wanted to talk to him and appellant stated that he did, but that he was still worried about the death penalty. Rhoads asked appellant if it would make him feel more comfortable if Rhoads would assure him that he would not file a capital murder case. Appellant replied that it would. Rhoads told appellant that he would put it in writing that he was not filing a capital murder charge. As discussed in the first ground of error, Rhoads testified unequivocally that there was no "exchange" of promises.

Rhoads testified that he "reiterated" several times to the appellant that he had a right to have his lawyer there with him. Rhoads stated that he discussed the issue of waiving the presence of counsel several times with the appellant through the course of the evening, both prior to appellant's counsel coming to the sheriff's office, and after he left.

*Edwards v. Arizona,* 451 U.S. 477, 101 S.Ct. 1880, 68 L.Ed.2d 378 (1981); *Wilkerson v. State,* 657 S.W.2d 784 (Tex.Cr.App. 1983); and *Phifer v. State,* 651 S.W.2d 774 (Tex.Cr.App.1983), cited by appellant, do not hold that a defendant cannot waive his right to the presence of his attorney during custodial interrogation. The cases do clearly say, however, that the State has a "heavy" burden to show that the accused validly waived his right. The cases cited state that an accused, who has previously requested counsel, can waive his right to counsel's presence during custodial interrogation if the "accused himself initiates further communication, exchanges, or conversations with the police."

The testimony of Rhoads and Jernigan is that the appellant initiated the further communication or conversation which resulted in the written confession. Jernigan testified that appellant told him that he had not eaten or slept since it happened and that he had to "talk about this thing" and get it "off his chest." At that point, Jernigan told Rhoads that appellant wanted to talk to him. The significant inquiry is clearly outlined in *Wilkerson.* There must be some evidence that the interrogation was initiated by the accused subsequent to his assertion of his right to counsel. In both *Wilkerson* and *Phifer* there was "no evidence" that the defendant initiated the further conversation which led to the confession. The testimony of Rhoads and Jernigan is evidence that the "Edwards Rule" was not violated. See *Oregon v. Bradshaw,* 462 U.S. 1039, 103 S.Ct. 2830, 77 L.Ed.2d 405 (1983).

The next inquiry is whether the purported waiver was knowingly and intelligently made. This is determined from the totality of the circumstances, "including the necessary fact that the accused, not the police, reopened the dialogue." *Oregon v. Bradshaw,* supra.

The testimony of Officers Rhoads and Jernigan, as well as the testimony of the appellant, reveals that after the appellant initiated the further dialogue regarding the offense, Rhoads again informed appellant

that he had the right to have his attorney present during the interrogation. The written statement signed by appellant informed appellant that he had the right to have his attorney present "before or during any questioning." Appellant agreed that this statement was read to him by Rhoads before he signed the confession. Appellant admitted that he had received several warnings to the effect that he had the right to have his attorney present during any questioning. At one time, however, he stated that he understood the warnings to mean that it was an "either/or" situation. He could have his lawyer either before the questioning, or during the questioning; but, not at both times. The record reflects that on one occasion when appellant requested to talk to his lawyer, Rhoads stopped the interview and appellant's attorney was located and brought to the sheriff's office. When the totality of the circumstances are viewed, we hold that the appellant knowingly and intelligently waived his right to have counsel present during the interrogation which resulted in his confession. See *North Carolina v. Butler,* 441 U.S. 369, 99 S.Ct. 1755, 60 L.Ed.2d 286 (1979); *Kelly v. State,* 621 S.W.2d 176 (Tex.Cr.App.1981); *Williams v. State,* 566 S.W.2d 919 (Tex.Cr. App.1978).

The judgment of the trial court is affirmed.