Mark Rodney FREEMAN, Appellant,

v.

The STATE of Texas, Appellee.

No. 632–85.

Court of Criminal Appeals of Texas,
En Banc.

Nov. 26, 1986.

Arch C. McColl, III, S. Michael McColloch, David W. Coody, on appeal only, Dallas, for appellant.

Henry Wade, Dist. Atty., Anne B. Wetherholt, Julius Whittier and Terrance Hart, Asst. Dist. Attys., Dallas, Robert Huttash, State's Atty., Austin, for the State.

## OPINION ON APPELLANT'S PETITION FOR DISCRETIONARY REVIEW

W.C. DAVIS, Judge.

A jury convicted appellant of murder and assessed his punishment at fifty years' confinement. The Eastland Court of Appeals affirmed the conviction, holding that appellant's confession was not involuntary because the "promise" he received from police was not conditioned on his giving a confession. The Court of Appeals also

found that appellant knowingly and intelligently waived his right to have counsel present during the questioning which resulted in his confession. *Freeman v. State*, 691 S.W.2d 739 (Tex.App.—Eastland 1985). We granted appellant's petition for discretionary review to consider both issues.

The trial court conducted a pretrial hearing to determine the issue of the voluntariness of appellant's confession. The trial court found that appellant was properly informed of his rights, that no promise or threat was made to appellant, and that appellant freely and voluntarily confessed.

Steven Waddell was murdered by appellant, acting with Waddell's wife, on April 17, 1983, at a Sonic Drive-In in Grand Prairie. Appellant fled to Pulaski, Tennessee, where he was arrested on April 20, 1983. He was arraigned and an attorney was appointed for him. Harroll Lynn Rhoads, an investigator with the Grand Prairie Police Department went to Pulaski on April 21, to speak with appellant.

Rhoads testified that he met with Investigator Richard Jernigan, a member of the Sheriff's Department in Pulaski, and then spoke to appellant at about 6:15 p.m. on April 21. Rhoads informed appellant of his rights. Appellant told him he understood his rights and that he had an attorney. Rhoads explained to appellant that he was investigating Waddell's murder and he knew what had taken place during the offense, including the fact that Waddell had not died right after he was shot. He also told appellant that Waddell's wife had given statements and he asked appellant if he would like to talk about the offense. Rhoads testified that appellant reiterated several times that, although he wanted to talk about the offense, he was too young to die and did not want to get the death penalty. Rhoads showed appellant the

murder statute and the capital murder statute in the Texas Penal Code. He read both statutes and explained the differences to appellant. Rhoads testified that when he talked to appellant, based on what he knew about the case, he considered it a murder case not a capital murder case. Appellant then told Rhoads he would like to talk to him but that he wanted to see his attorney.

At that point appellant's attorney, Tom Stack, was contacted. He arrived at the Sheriff's office at about 7:30 p.m. to talk with appellant. Appellant and his attorney conferred for a while, after which Stack asked to speak with Rhoads. Rhoads told him what he knew about the offense and Stack indicated he knew what Rhoads was talking about. Rhoads testified Stack indicated that appellant wanted to talk about the offense but was afraid he would get the death penalty. Rhoads also testified Stack stated that if he could be sure that the police would not file a capital murder case on appellant they could talk about whether or not appellant would make a statement.[1] Rhoads told Stack he had to talk to his department in Grand Prairie about the matter. Stack said he would like to talk to the District Attorney in Dallas County the next morning and that they could then talk about the statement. Stack also told Rhoads that he had told appellant not to talk to the officers.

Rhoads immediately called Sergeant Dale Phifer of the Grand Prairie Police Department and explained the situation. Phifer told him he would confer with the legal advisors and call Rhoads back. Phifer spoke to Norman Kinne, an assistant district attorney for Dallas County, who told him that based upon the evidence the police related to him, including a statement from Waddell's wife, legally the cases were not capital murders and would not be accepted as such by the district attorney's office.[2]

---

**1.** Appellant was from Tennessee. Under Tennessee law the offense of murder was punishable by death. This might explain appellant's concern about the death penalty.

**2.** The case was not a capital murder case because appellant, who was apparently having an

affair with Waddell's wife, murdered Waddell and then committed robbery only to disguise his motive and hopefully his identity in committing the murder. See V.T.C.A. Penal Code, Sec. 19.-03(a)(2).

Phifer called Rhoads back that same evening and told him it was okay to tell appellant that the police would not file capital murder charges if appellant was the one who had initiated the subject.

Just after Rhoads finished with the phone calls, Jernigan came to Rhoads and said appellant wanted to talk to him. Jernigan brought appellant into the room and Rhoads asked him if he wanted to talk about the offense. Appellant said he did, but that he still had some reservations about the death penalty. Rhoads asked him if he would feel better about it if Rhoads stated in writing that a murder charge would be filed and that a capital offense would not be filed against appellant. Appellant said he would feel better if that were done. Rhoads then executed an affidavit stating that appellant would not be charged with capital murder.

Rhoads testified he hoped that his written affidavit would lead appellant to confess, but that he had no assurance of that. He simply told appellant that he would not be charged with capital murder in response to appellant's concern about the matter. Rhoads also said he repeatedly told appellant that he could have his attorney with him or that he could waive counsel. Appellant indicated he would waive having his attorney present. Appellant then gave a confession admitting his part in killing Waddell.

Rhoads testified that no promises were given to appellant in exchange for his confession and that no bargain was made. Rhoads hoped that assuring appellant that he would not be charged with capital murder would ease appellant's mind so that he would confess. No "bargain" was made. The "promise" not to charge appellant with capital murder was simply an assurance to appellant that under the law and the evidence he would not be charged with capital murder.

Appellant's version of the events leading up to his confession is, not surprisingly, contrary to Rhoads' rendition. Appellant testified that after he conferred with his attorney, Stack told Rhoads that appellant was not going to make a statement and that if he still wanted to make a deal Stack would be back in the morning and would call the district attorney. Appellant also said that after his attorney left Rhoads told appellant that he was leaving the next morning and was going to file capital murder charges and that appellant would not have a choice about it. Appellant said Rhoads called the District Attorney's office while appellant was present and then told appellant he would make an agreement with him. Appellant said the agreement was that he would not be charged with capital murder and in return he would make a statement. Appellant also said he requested that his lawyer be present.

The trial court is the sole judge of the credibility of the witnesses in a pretrial hearing and absent a showing of an abuse of discretion, the trial court's findings will not be disturbed. *Hawkins v. State*, 613 S.W.2d 720 (Tex.Cr.App.1981); *McMahon v. State*, 582 S.W.2d 786 (Tex.Cr.App.1979). Obviously, the trial court chose to disbelieve appellant's version of the circumstances surrounding the confession. We find nothing in the record to show an abuse of discretion and we likewise reject appellant's version.

Appellant contends that his statement was inadmissible under the long established rule that:

A confession obtained as a result of a benefit positively being promised to the defendant made or sanctioned by one in authority and of such character as would be likely to influence a defendant to speak untruthfully is not admissible.

*Walker v. State*, 626 S.W.2d 777, 778 (Tex. Cr.App.1982). See also *Hardesty v. State*, 667 S.W.2d 130 (Tex.Cr.App.1984); *Hawkins v. State*, 613 S.W.2d 720 (Tex.Cr.App. 1981); *Washington v. State*, 582 S.W.2d 122 (Tex.Cr.App.1979); *Fisher v. State*, 379 S.W.2d 900 (Tex.Cr.App.1964); *Searcy v. State*, 28 Tex.App. 513, 13 S.W. 782 (1890).

The Court of Appeals held that in order to render a confession involuntary the promised benefit to the accused must be a benefit offered *in exchange* for a state-

ment from the accused. The Court of Appeals noted that the aforementioned cases have all involved conditional promises from the State to the accused whereby the State promises a benefit only "if" the accused gives a statement. In the instant case the "promise" was unconditional. Appellant was told that he would not be charged with capital murder. While Rhoads hoped this would ease appellant's mind so that he would confess, it was not contingent on appellant making a statement. Thus, the Court of Appeals found that no "deal" or "agreement" was made because the assurance not to file a capital murder charge was unconditional.

Appellant argues that his statement was induced by the promise of a benefit—no capital murder charge—and was therefore involuntary under Texas law and constitutional law. We disagree with appellant.

■ Appellant is correct that a statement induced by a promise of some benefit to a defendant, which promise is positive, made or sanctioned by one in authority, and likely to influence the defendant to speak untruthfully is involuntary. *Fisher*, supra. The rationale for this rule is the inherent unreliability of a confession if the influence applied was such as to make the defendant believe his condition would be bettered by making a confession, true or false. *Searcy*, supra.

■ However, the State is correct that this four part test does not apply in the instant case because no "promise of some benefit" to appellant was ever made. In the instant case appellant himself stated repeatedly to the police that he wanted to talk to them, but, he was fearful of the death penalty. In response to this anxiety, Rhoads checked with legal advisors, including the district attorney's office and then told appellant he would not be charged with capital murder. This was not a promise of a benefit in the sense that appellant was promised something he would not otherwise have had. Rather, it was an answer to relieve appellant's anxiety and a statement of the status of the case in terms of the facts and law. The police did not

coerce appellant by suggesting or expressly stating that if he would confess they would reduce the charge. Nor did they threaten explicitly or implicitly that he would be charged with capital murder if he did not make a statement. Appellant himself initiated the discussion, essentially telling Rhoads that he wanted to confess but he wanted to know the ramifications of such, in terms of punishment. Although appellant may have decided not to confess if he was to be charged with capital murder, the decision not to charge him with capital murder was not made in response to appellant's wishes or to accomodate appellant, but was a choice made by the district attorney after considering the evidence the police had. Thus, legally, appellant was not and could not be charged with capital murder. Just because this served to relieve appellant's concern and "ease his mind" does not render the subsequent confession involuntary nor render the information a "promise of some benefit" to appellant.

The instant case is analogous to *Roberts v. State*, 545 S.W.2d 157 (Tex.Cr.App.1977) and *Hawkins*, supra. In *Roberts* the defendant contended that his confession was involuntarily given in return for his wife's release from custody. The defendant and his wife were arrested while in their car when police saw someone hand a package of heroin to the defendant, the driver of the car. The defendant insisted to police that his wife did not know anything about the drugs and had nothing to do with it. The officer asked the defendant if he would make a statement to that effect. The defendant agreed. This Court held the confession to be voluntary, stating that the police officer had a duty to determine whether or not there was evidence to hold or release the defendant's wife. And, "it was the appellant, who first said the appellant's wife was innocent and initially introduced the subject of leniency for his wife. The trial court could well conclude that the statement was self-motivated and voluntarily made by the appellant because he wanted his innocent wife who was under suspi-

cion freed ..." *Roberts,* 545 S.W.2d at 161.

In the instant case appellant's statement was self-motivated and voluntarily made after appellant's anxiety about the death penalty was shown to be groundless. Likewise, *Hawkins,* supra, is analogous to the instant case. The defendant Hawkins first introduced to the police a long history of his abnormal behavior. The officers "professed understanding and empathy ... not to promise anything but to get to the point of the interrogation." This sympathy and willingness to help the defendant was not found to be a promise which induced the defendant's confession. In the same way, Rhoads' inquiry into the status of the offense as a capital offense or "only" a murder offense was not a promise to induce a confession. The easing of appellant's mind by checking out the legal status of his case is somewhat analogous to the empathy and willingness to help related in *Hawkins,* supra.

This case is not like those where the police promise not to seek the death penalty if the defendant gives a statement. That situation is clearly improper and renders a confession involuntary. Cf. *McMahon,* supra; and *Sherman v. State,* 532 S.W.2d 634 (Tex.Cr.App.1976). Nor is the instant case similar to a case in which the State offers to reduce the charge if the defendant gives a statement. See W. Ringel, Searches & Seizures, Arrests and Confessions, § 25.2(c) (1984). No "promise" is made when a defendant expresses a fear of prosecution for some offense for which he actually cannot be prosecuted and the State explains that he cannot be prosecuted for the feared offense, and the defendant then confesses. Just because a defendant thinks he has benefitted because his anxiety is quelled does not reflect a promise of some benefit from the State. The benefit lay in the facts of the case not in the actions of the police. The fact that he need not have worried about the death penalty and that the police allayed that worry, without any deal, bargain, agreement, or exchange does not render the confession involuntary. Further, from the record before us it does not appear that the police pretended that they could charge appellant with capital murder and agreed that if he would confess, would not so charge him. This would be a different case. Rhoads' affidavit assuring appellant that he would not be charged with capital murder was not contingent on a confession. Thus, not only was a promise of some benefit not bestowed upon appellant by the State, but there was no "deal" or "bargain" or "contingency" involved.

Under the constitutional standard—the totality of the circumstances—appellant's confession was freely and voluntarily given. The totality of the circumstances show that appellant was informed of his rights numerous times and that he conferred with his attorney immediately prior to making a statement. Appellant told the police and indicated to his attorney that he wanted to confess. Once his fears about the death penalty were erased, appellant did confess. The circumstances show that appellant voluntarily and freely confessed. The ground of error is overruled.

Appellant next contends that his confession was taken in violation of the rule set out in *Edwards v. Arizona,* 451 U.S. 477, 101 S.Ct. 1880, 68 L.Ed.2d 378 (1981) because the police initiated the conversation with him that led to his confession after he had invoked his right to counsel. The Court of Appeals held that appellant had initiated the conversation which resulted in his confession.

Rhoads testified that when he arrived in Pulaski he met with appellant, informed him of his rights, told him not to say anything, and to listen while Rhoads told him what the police knew about the offense. Rhoads asked appellant if he wanted to talk and appellant indicated he would like to talk to Rhoads but that he was concerned about the death penalty and first wanted to speak with his attorney. After appellant spoke with his attorney in a room in the kitchen area of the sheriff's office, he remained there while his attorney talked to Rhoads. Jernigan went into the kitchen,

fixed himself a cup of coffee and asked appellant if he wanted one. The two of them started talking. Jernigan testified that he did not remember what they talked about except that they talked about "various things, not the case, just—we were just talking," being friendly. During their conversation Jernigan asked appellant if he was hungry and appellant told him he was, but that he had been unable to eat or sleep since "it happened." Appellant said "I've got to talk about this thing. I've got to get it off my chest. I can't eat or sleep." Jernigan testified that appellant also told him that "he had tried to explain to his attorney that he wanted to talk about it and that he knew he would have to go back to Texas and get it worked out and that the attorney had not listened to him and that he couldn't go any longer, he had to get something to eat and some sleep, some rest."

At this point Jernigan left the kitchen and told Rhoads that appellant wanted to talk to him. Jernigan brought appellant into his office and Rhoads asked him if he wanted to talk to him. Appellant said "Yes, but I'm still afraid. I'm too young to die." Jernigan testified that Rhoads "very carefully" went over appellant's right to have his attorney present. He asked appellant if he wanted them to call Stack back or whether he wanted to go on without him. Appellant said he wanted to talk to Rhoads about it. Several more times Rhoads stated to appellant that he could have his attorney with him, but appellant indicated he wished to talk to Rhoads. Rhoads then gave appellant a written statement that he would not be charged with capital murder. Appellant and Rhoads talked and appellant confessed to his part in the murder.

■ Once a defendant invokes his right to counsel, he may not be subjected to further interrogation until counsel is present, unless the defendant himself initiates dialogue with the authorities. *Edwards v. Arizona,* supra. Where reinterrogation follows such initiation by a defendant, the State still has a "heavy burden" to show that a defendant's waiver of his right

to counsel during interrogation was knowing and intelligent. *Oregon v. Bradshaw,* 462 U.S. 1039, 103 S.Ct. 2830, 77 L.Ed.2d 405 (1983); *Edwards v. Arizona,* supra; *Wilkerson v. State,* 657 S.W.2d 784 (Tex. Cr.App.1983).

■ Appellant contends that Jernigan initiated the conversation in the kitchen and thus violated his previously invoked right to counsel. Jernigan stated that he simply asked appellant if he wanted a cup of coffee and they had a friendly conversation. The State argues that appellant initiated further interrogation about the offense by his response to Jernigan's innocuous inquiry about whether he was hungry. The rule set out in *Edwards v. Arizona,* supra, does not forbid all conversation between police and an accused. As the Supreme Court noted in *Oregon v. Bradshaw,* 462 U.S. at 1045, 103 S.Ct. at 2835, it is doubtful "that it would be desirable to build a superstructure of legal refinements around the word 'initiate' in this context, [and] there are undoubtedly situations where a bare inquiry by either a defendant or by police officer should not be held to 'initiate' any conversation or dialogue." The rule "is designed to protect an accused in police custody from being badgered by police officers in the manner in which the defendant in *Edwards* was." *Oregon v. Bradshaw,* 462 U.S. at 1044, 103 S.Ct. at 2834.

In the instant case the record of the pretrial hearing shows that Jernigan's conversation with appellant, begun by asking if appellant wanted something to drink, was simply a "friendly conversation" that had nothing to do with the case. The conversation was not an effort to elicit a statement, confession, or incriminating information from appellant. It was not an attempt at subtle interrogation designed to coerce appellant into confessing. Cf. *Brewer v. Williams,* 430 U.S. 387, 97 S.Ct. 1232, 51 L.Ed.2d 424 (1977); *Bush v. State,* 697 S.W.2d 397 (Tex.Cr.App.1985). Neither the rule nor the rationale of *Edwards v. Arizona,* supra, was violated by Jernigan's conversation with appellant in the kitchen of the Sheriff's office. The conversation is

analogous to the "bare inquiry" type of dialogue noted in *Oregon v. Bradshaw,* supra, which are "routine incidents of the custodial relationship" and which do not constitute "initiation" in the sense forbidden in *Edwards v. Arizona,* supra. While it was more detailed than a "bare inquiry," the gist of the conversation was the same. The spirit and rule of *Edwards v. Arizona,* supra, certainly does not require absolute silence between an accused and the police, once the accused has invoked his right to counsel. Jernigan knew appellant and a "friendly conversation", small talk, including inquiries about thirst and hunger, does not constitute "initiation" of interrogation as forbidden by *Edwards v. Arizona,* supra.

The "initiation" of communication about the offense came from appellant in his response to Jernigan's question about whether he was hungry. Jernigan, naturally interpreting appellant's response to indicate a desire to talk, promptly told Rhoads. Rhoads checked with appellant to be certain he wanted to talk and that he did not want his counsel present. Appellant said he wanted to talk and waived his right to counsel. The record of the particular facts and circumstances of this case thus shows that appellant initiated the reinterrogation about the offense. Also, appellant had just spoken with his attorney before talking to Jernigan and Rhoads and he was informed of his rights on numerous occasions. We hold that the record also shows that appellant knowingly and intelligently waived his right to counsel.

Appellant contends that his testimony at the pretrial hearing is undisputed and reflects a situation analogous to *Bush,* supra, in that subtle interrogation and coercion was employed by Jernigan. Appellant testified that Jernigan and he sat in the kitchen drinking coffee and Jernigan told him a story about "I don't know, some guy blowing his head off over a crime, and he left a note about the guilt being too much for him and everything like that; and he was saying that, you know, if I'd go ahead and—you know, with the evidence they've got they could convict me, and if I go

ahead and make a statement to him it would go easier on me and everything like that."

Appellant also testified that Rhoads then came into the kitchen and told appellant that he, Rhoads, was leaving the next morning and appellant had a choice of making a statement that night or in the morning, but that if he did not make a statement Rhoads would file a capital murder charge. Appellant also said he repeatedly asked that his attorney be present.

Jernigan was not recalled to testify about whether or not he told appellant a story about someone committing suicide over a crime about which he felt guilty. Appellant was not asked whether he told Jernigan he wanted to talk about it, to "get it off his chest." If appellant's version is believed the confession is involuntary and his right to counsel was blatantly violated. The trial court obviously rejected appellant's testimony by finding the confession to have been voluntarily and freely made. The trial court is the sole judge of the credibility of the witnesses in a pretrial hearing. Absent a showing of an abuse of discretion the trial court's findings will not be disturbed. *Hawkins,* supra. The ground of error is overruled.

The judgment of the Court of Appeals affirming the trial court is likewise affirmed.

TOM G. DAVIS, J. concurs in the result.

ONION, P.J., and CLINTON and TEAGUE, JJ., dissent.