**AFFIRMED and Opinion Filed August 2, 2024**



In The
# Court of Appeals
# Fifth District of Texas at Dallas

_____

### No. 05-23-00027-CR
_____

### RICARDO BERNAL, Appellant
### V.
### THE STATE OF TEXAS, Appellee

_____

**On Appeal from the 366th Judicial District Court**
**Collin County, Texas**
**Trial Court Cause No. 366-83255-2022**

_____

## MEMORANDUM OPINION

Before Justices Molberg, Pedersen, III, and Goldstein
Opinion by Justice Pedersen, III

A jury found appellant Ricardo Bernal guilty of continuouss sexual abuse of a young child and assessed his punishment at confinement for life. In this Court, appellant argues that the trial court erred by (1) admitting his custodial statement (a) because he was not warned of his statutory or constitutional rights before speaking with officers and (b) because the statement was not given freely or voluntarily; (2) refusing to charge the jury as required by article 38.22; (3) denying his motion to quash the indictment; and (4) admitting evidence of extraneous bad acts because the

evidence was unfairly prejudicial in light of its limited probative value. We affirm the trial court's judgment.

## BACKGROUND

When she was twelve years old, appellant's step-daughter, G.H., told her mother that appellant had touched her inappropriately. Her mother took her to the Children's Advocacy Center of Collin County (CAC), where G.H. underwent a forensic interview and disclosed a single event of appellant's touching her vagina when she was about six.[1] While at the CAC, G.H.'s mother spoke to Detective Joseph Scimone of the Wylie Police Department.

Scimone contacted appellant and asked him to come to the CAC for an interview. Appellant came and underwent an interview lasting approximately two and one half hours, during which he confessed to a series of different sexual contacts with G.H. when she was "six or seven" over a period of a few months. The interview was recorded, and appellant left the CAC when it was over. Appellant was arrested the next day and was indicted for continuous sexual abuse of a young child.

As trial began, appellant moved to suppress his recorded statement, arguing the statement was inadmissible because he had not been warned of his rights before Scimone questioned him and because it was given involuntarily. He also objected to admission of a list of specific acts that appellant confessed to in the interview that

---

[1] After she had been in counseling for a time, G.H. underwent a second forensic interview and described a continuing pattern of sexual abuse by her step-father over a number of years.

were not included in his indictment. The trial court denied the motion to suppress on all grounds.

At trial, Scimone testified concerning his interview of appellant, and the recording of that interview was played for the jury.

Appellant's wife, G.H.'s mother, testified to learning of the abuse, separating the children from appellant, and then confronting him with G.H.'s allegation. When he admitted some inappropriate touching, she told him to leave the house. She allowed him to return for a short visit the next day to say good bye to the children (other than G.H.) and to apologize to them. She testified that by the time of trial she had moved out of state with the children and had filed for divorce from appellant.

G.H. was thirteen years old at the time of trial. She testified to various acts of sexual abuse by appellant, beginning when she was about six years old and continuing until she was about ten. She acknowledged that she did not want to talk about the abuse and therefore had given both her mother and the first forensic interviewer abbreviated statements about what had happened.[2] However, over time, she became able to give more details concerning the types and duration of the abusive acts to both her mother and the second forensic interviewer. At trial, G.H. related occurrences when appellant touched her vagina with his hand, with his sexual organ, and with his mouth. Appellant encouraged G.H. to touch his sexual organ

---

[2] Indeed, both G.H. and her mother described her experiencing a panic attack—or an anxiety attack—as she first tried to tell her mother about the abuse.

with her hand and her mouth. She described occasions when appellant would watch her as she bathed.

Finally, Eli Molina, the Forensic Interviewer Supervisor at the CAC gave expert testimony concerning forensic interviews generally and the conduct of the two forensic interviews in this case.

The jury found appellant guilty of continuous sexual abuse and assessed his punishment at confinement for life. This appeal followed.

## DISCUSSION

Appellant raises five issues for our review.

### Admission of Appellant's Recorded Statement

As trial began, appellant moved to suppress his recorded statement, in whole or in specific part, on a number of grounds. Following a hearing, the trial court denied the motion. In his first two issues, appellant contends that the trial court erred by admitting his recorded statement (1) because he was in custody, but he was not given his constitutional and statutory warnings before he answered the detective's questions, and (2) because the statement was not given voluntarily.

We review the trial court's ruling on a motion to suppress for an abuse of discretion; we may not reverse that ruling unless it is outside the zone of reasonable disagreement. *Wexler v. State*, 625 S.W.3d 162, 167 (Tex. Crim. App. 2021). When—as in this case—a trial court denies a motion to suppress and does not enter findings of fact, we view the evidence in the light most favorable to the ruling and

–4–

assume the trial court made implicit findings of fact that support its ruling as long as those findings are supported by the record. *Id.* We review the record as it existed at the time of the suppression hearing. *O'Hara v. State,* 27 S.W.3d 548, 551 (Tex. Crim. App. 2000).

*Was appellant in custody?*

Appellant first argues that his recorded statement was the product of custodial interrogation, so that Detective Scimone's failure to warn him of his rights pursuant to *Miranda v. Arizona*, 384 U.S. 436 (1966) and article 38.22 of the Texas Code of Criminal Procedure should have rendered the statement inadmissible. "Unwarned statements obtained as a result of custodial interrogation may not be used as evidence by the State in a criminal proceeding during its case-in-chief." *Herrera v. State*, 241 S.W.3d 520, 525 (Tex. Crim. App. 2007). Appellant bore the initial burden of proving that he was in custody when he gave his statement. *See id.* at 526. We review the trial court's custody determination giving almost total deference to its implicit factual assessment of the circumstances surrounding appellant's questioning and reviewing de novo the ultimate legal determination of whether appellant was in custody under those circumstances. *See Wexler*, 625 S.W.3d at 167.

Texas courts have held that four general situations may constitute custody: (1) when the suspect is physically deprived of his freedom of action in any significant way, (2) when a law enforcement officer tells the suspect that he cannot leave, (3) when law enforcement officers create a situation that would lead a

–5–

reasonable person to believe that his freedom of movement has been significantly restricted, and (4) when there is probable cause to arrest and law enforcement officers do not tell the suspect that he is free to leave. *Dowthitt v. State*, 931 S.W.2d 244, 255 (Tex. Crim. App. 1996).

The first three Dowthitt situations require a level of restriction upon the individual's freedom of movement that a reasonable person would associate with an arrest as opposed to an investigative detention. *Id.* Appellant contends that his questioning by Scimone meets this standard. He asserts that he "was kept in a small, windowless room under armed guard for several hours." Our review of the recording does indicate the questioning took place in a relatively small and windowless room, and Scimone does appear to have a gun and handcuffs on his holster, although he did not draw attention to either during the interview. These facts are typical of circumstances of police investigation, and they do not indicate that a reasonable person would believe he was under arrest. *See, e.g.*, *Nelson v. State*, No. 05-12-00871-CR, 2013 WL 3771376, at *3 (Tex. App.—Dallas July 16, 2013, no pet.) (mem. op., not designated for publication) (interview took place in small room; officer did not display firearm or handcuffs or refer to them, and wearing them does not show movement was restricted).

As the interview began, Scimone told appellant he was free to leave at any time and demonstrated to him that the door to the interview room was not locked. But appellant contends that "[h]e was not permitted to leave, and when he tried, the

interrogating officer repeatedly blocked his path and redirected him to the interview chair." We disagree with this characterization. At different times in the interview, usually after appellant made an admission of sexual abuse, he became very emotional. Sometimes he held his head in his hands and sobbed; when this occurred Simone would often reach over and touch appellant's shoulder in what appears to be a comforting gesture. Three times when appellant became very emotional, he stood up, and twice he paced back and forth in the small room. Scimone did not block appellant in any fashion. He stood with his back to the table, and after allowing appellant to pace or stand for a while, he encouraged appellant to sit back down and continue and touched his shoulder in the same way he had throughout the interview. Appellant gave no indication he was trying to leave the room, and—had he tried—Scimone would not have been in his path.

Again, at the very start of the interview, Scimone told appellant he was free to leave at any time. At the end of the interview, appellant did leave. We conclude that appellant's freedom of movement was not restricted to the level that a reasonable person would associate with an arrest as opposed to an investigative detention. *See Dowthitt*, 931 S.W.2d at 255.

Appellant also argues that his interview implicates the fourth *Dowthitt* situation, i.e., that "there is probable cause to arrest and law enforcement officers do not tell the suspect that he is free to leave." *Id.* As we have stated, at the beginning of the interview Scimone *did* tell appellant he was free to leave at any time.

Importantly, this fourth situation also requires the questioning officer to manifest his knowledge of probable cause to the suspect. *Id.* at 255.

Appellant argues that Scimone had probable cause to arrest him before the interview because the detective had spoken with appellant's wife and watched G.H.'s forensic interview. We know that G.H.'s descriptions to both her mother and the forensic interviewer at that point in time were limited to one vague allegation of touching; we cannot say they were certain to support probable cause for arrest. Appellant also relies on a series of his own texts to his wife before the interview to establish that he was aware that probable cause existed. But the test here is not whether a non-lawyer believes that probable cause to arrest him exists. And appellant's texts—which begged his wife to talk to him before the interview and expressed fear that he could be going to jail—cannot be evidence that Scimone later manifested his knowledge of probable cause to appellant. The fourth *Dowthitt* custody situation does not describe appellant's interview in this case.

We conclude that appellant was not in custody during his questioning by Scimone. *See Wexler*, 625 S.W.3d at 169. Accordingly, Scimone was not required to warn appellant of his rights under *Miranda* and Texas article 38.22. And the trial court did not abuse its discretion in admitting appellant's statement because he had not been warned. We overrule appellant's first issue.

*Was appellant's statement voluntary?*

In his second issue, appellant contends that the trial court erred by admitting his recorded statement because it was involuntary and was the product of mental exhaustion and psychological pressure designed to overcome his will. Texas law provides: "A statement of an accused may be used in evidence against him if it appears that the same was freely and voluntarily made without compulsion or persuasion" and the statement otherwise comports with Texas law. CRIM. PROC. art. 38.21. We determine voluntariness by examining the totality of the circumstances. *Delao v. State*, 235 S.W.3d 235, 239 (Tex. Crim. App. 2007). We give great deference to the trial court's decision to admit or exclude a confession, and we will overturn the court's decision only where a flagrant abuse of discretion is shown. *Id.* at 238.

Appellant first argues that he was emotionally "fragile" at the time of his interview for a number of reasons: his father had passed away a week earlier, he was distraught following G.H.'s outcry, his wife had ordered him out of the house, and he apparently was sleeping—in some combination—at his mother's home and in his truck.[3] He emphasizes his "fatigue." While we may consider a lack of sleep

---

[3] Appellant makes reference to his lack of experience with the police as a factor to be considered here, citing *Haynes v. State of Wash.*, 373 U.S. 503 (1963). But the majority opinion in *Haynes* rejects the use of such a consideration. *Id.* at 514 ("Neither the petitioner's prior contacts with the authorities nor the fact that he previously had made incriminating oral admissions negatives the existence and effectiveness of the coercive tactics used in securing the written confession introduced at trial."). The dissent's reliance on Haynes's experience with police does not bind us.

when determining whether a statement was voluntarily made, "tiredness alone does not show that the defendant's capacity for self-determination was impaired." *Acosta v. State*, No. AP-77,092, 2024 WL 2845498, at *19 (Tex. Crim. App. June 5, 2024). The video here demonstrates that appellant was coherent throughout the interview, and even when left alone for a long period of time, he did not show an inclination to close his eyes or to succumb to sleep. "[A] claim of tiredness or lack of sleep itself does not render a statement involuntary." *Id.*

Appellant argues that his emotional distress or instability could have contributed to his "lack of will," rendering his statement involuntary. He cites two cases for this proposition, but neither is persuasive here. First, he cites *Mincey v. Arizona*, 437 U.S. 385 (1978). There the Supreme Court conducted its examination of the record to determine whether defendant Mincey's statement was the product of "a rational intellect and a free will." *Id.* at 398. Mincey was charged, inter alia, with the murder of a police officer during a drug raid; Mincey was wounded in the exchange of gunfire. He was interviewed in the hospital's intensive care unit for four hours, despite suffering from damage to his sciatic nerve and partial paralysis of his right leg, having tubes inserted into his throat to help him breathe—which made him unable to speak—and through his nose into his stomach to keep him from vomiting,

being catheterized, receiving "various drugs," complaining of "unbearable" pain, and falling in and out of consciousness.[4] *Id.* at 396–400. The Supreme Court characterized the detective's questioning as "relentless"; it concluded that Mincey's statements "were thus the result of virtually continuous questioning of a seriously and painfully wounded man on the edge of consciousness" and were not the product of his free and rational choice. *Id.* at 401. Appellant, by contrast, was emotionally upset, largely because G.H. had outcried concerning his conduct and, as a result, he had to leave his wife and children. We see absolutely no parallel between Mincey's physical condition and appellant's emotional condition.

Appellant's also relies on *Ballestero v. State*, in which our sister court agreed that "the emotional confusion and debilitation of a suspect may well call into question the voluntariness of his confession to officers." 640 S.W.2d 423, 425 (Tex. App.—San Antonio 1982, no pet.) (citing *Mincey*, 437 U.S. at 396–402). Ballestero was being questioned about the murder of his former wife when he was informed that a witness had implicated him in the offense. Ballestero then confessed to having caught his ex-wife and a second victim in bed together and having shot them both. *Id.* at 426. He argued that his emotional state—"emotionally upset to the point of hysteria"—rendered his confession involuntary, but the court stated: "His emotional distress at being confronted with having killed his ex-wife, with whom he

---

[4] Mincey also repeatedly attempted to stop the interview and asked for a lawyer.

had been hoping to reconcile, is understandable. This alone, however, does not compel a finding that the statement was involuntary." *Id.* Similarly, appellant's being emotionally upset when confronted with his sexual abuse of G.H. was understandable, and distress over his wife's anger was understandable, but hardly compels a determination that his statement was involuntary.

Finally, appellant argues that during the interview, Scimone made impermissible promises to him, which he relied on when making his confession, including:

- Listen, I promise, everything's going to be ok. I'm telling you right now. I promise.

- Man listen, the sooner we can identify what's happened the sooner we can get past this and get everyone the help they need. That's what's most important here.

- Listen, I'm not taking you to jail. This is all going to blow over. We're going to move past this. I promise you that.[5]

The court of criminal appeals has described the kind of promise that will render a confession involuntary: "the promise must be positive, made or sanctioned by someone in authority, and of such an influential nature that it would cause a defendant to speak untruthfully." *Martinez v. State*, 127 S.W.3d 792, 794 (Tex.

---

[5] In this vein, appellant also complains of Scimone's statement that "I'm not going to lie to you today at all. I don't do that. That's not how I work, ok?" But when appellant asked "if I tell you, am I going to jail?" Scimone lied, "Do you see handcuffs on me, Richard? Absolutely not. Absolutely not. I told you, we're just having a conversation here." Appellant relates that Scimone is wearing handcuffs in the video.

Our review of the recording comports with the State's in this instance: Scimone appears to ask whether appellant sees handcuffs on *appellant*, not on Scimone.

Crim. App. 2004). That court has described such a promise as requiring an "if-then" relationship between making a confession and obtaining a promised benefit. *See Chambers v. State*, 866 S.W.2d 9, 20 (Tex. Crim. App. 1993). We must ask whether the police induced the confession "by implicitly or explicitly suggesting a 'deal, bargain, agreement, exchange, or contingency.'" *Id.* at 20–21. (quoting *Freeman v. State,* 723 S.W.2d 727, 731 (Tex. Crim. App. 1986)). In *Chambers*, the court concluded that the officer's statement that "everything is going to be all right" did not qualify as such a promise; instead the officer's response to appellant's anxiety in that case was "an attempt to ease his mind with the assurances of a cliché." *Id.* We conclude that the statements quoted above are similar clichés and comforting expressions, intended to calm the appellant's emotions and to continue the interview. Scimone made no positive promises to appellant within the meaning of *Chambers* and *Martinez*.

We conclude that the trial court did not err in concluding that appellant's statement was made voluntarily, and it did not abuse its discretion in admitting the statement. We overrule appellant's second issue.

## Refusal to Instruct Jury on Failure to Warn

In his third issue, appellant argues the trial court erred by refusing to instruct the jury concerning Scimone's failure to warn him prior to questioning. *See* CRIM. PROC. art. 3822, §§ 3, 7. Appellant contends that a dispute existed in the evidence concerning whether appellant was in custody at the time of his statement. He states

–13–

that "[a]t the very least, there was a dispute as to whether Appellant was in custody at the time probable cause arose and Det. Scimone prevented his leaving the interrogation room." As a result, he asserts, the trial court was "obligated to instruct the jury under article 38.22, § 7, setting out the requirements of § 3, and authorizing the jury to determine the issue of Appellant's custody."

In reviewing an alleged jury charge error, we determine whether error exists, and if it does, we evaluate whether sufficient harm resulted from the error to require reversal. *Ngo v. State*, 175 S.W.3d 738, 743–44 (Tex. Crim. App. 2005).

The court of criminal appeals has addressed the circumstances when article 38.22 instructions should be given to the jury. When addressing section 7 and a complaint that an unwarned statement was admitted in evidence, that court said the following:

> If the defendant made his statement as the result of custodial interrogation, he is also entitled—when the issue is raised by the evidence—to have the jury decide whether he was adequately warned of his rights and knowingly and intelligently waived these rights. Section 7 of Article 38.22 states:
>
> > When the issue is raised by the evidence, the trial judge shall appropriately instruct the jury, generally, on the law pertaining to such statement.
>
> The phrase "the issue" refers to compliance with the statutory warnings set out in both Articles 15.17 (Duties of Arresting Officer and Magistrate) and 38.22, §§ 2 & 3, and the voluntariness of the defendant's waiver of the rights. For it to be "raised by the evidence" there must be a genuine factual dispute,

*Oursbourn v. State*, 259 S.W.3d 159, 176 (Tex. Crim. App. 2008).

–14–

Based on this understanding of section 7, we conclude that appellant's argument fails for at least two reasons. First, entitlement to an article 38.22, section 7 instruction is predicated on his having made his statement "as a result of custodial interrogation." *Id.*; *see also Estrada v. State*, 313 S.W.3d 274, 300 (Tex. Crim. App. 2010) (article 38.22, section 7 instruction only available when defendant in custody and entitled to be informed of those rights). We have concluded that appellant was not in custody at the time of his statement.

The second reason is related to the first: appellant requested the instruction, arguing that the evidence raised an issue concerning whether he was in custody. But as the court of criminal appeals explained, "the issue" supporting a section seven instruction is whether appellant was given his *Miranda* and article 38.22 warnings; that is not a disputed issue in this case. *See id.*

We conclude the trial court did not abuse its discretion when it refused to instruct the jury pursuant to article 38.22, section 7. We overrule appellant's third issue.

**Motion to Quash Indictment**

In his fourth issue, appellant argues that the trial court erred by denying his motion to quash the indictment in this case. Appellant's motion contended that the indictment did not sufficiently identify specific acts committed over the five-year period to give him notice of the charges and to allow him to prepare for trial. He argues that lack of notice violated his constitutional and statutory rights. *See* U.S.

CONST. amend. VI; TEX. CONST. art. I § 10; TEX. CODE CRIM. PROC. art. 21.11 ("An indictment shall be deemed sufficient which charges the commission of the offense in ordinary and concise language in such a manner as to enable a person of common understanding to know what is meant, and with that degree of certainty that will give the defendant notice of the particular offense with which he is charged, and enable the court, on conviction, to pronounce the proper judgment."). The sufficiency of an indictment is a legal question that we review de novo. *Smith v. State*, 309 S.W.3d 10, 13 (Tex. Crim. App. 2013).

The indictment in this case charged that, during the time period from "on or about the 10th day of August, 2014 through the 10th day of August, 2019," appellant committed two or more acts of sexual abuse against G.H., including:

> Indecency with a Child by Contact: intentionally and knowingly, with the intent to arouse or gratify the sexual desire of any person, engage in sexual contact by touching part of the genitals of G.H., a child younger than seventeen (17) years of age, by means of the defendant's hand;

> AND/OR

> Aggravated Sexual Assault of a Child: intentionally and knowingly cause the mouth of G.H., a child then younger than fourteen (14) years of age, to contact the male sexual organ of the defendant;

> AND/OR

> Aggravated Sexual Assault of a Child: intentionally and knowingly cause the female sexual organ of G.H., a child then younger than fourteen (I 4) years of age, to contact the mouth of the defendant

The State argues that this quoted language is legally sufficient because it tracks the offense defined by section 21.02, which requires commission of "two or more acts

of sexual abuse." TEX. PENAL CODE ANN. § 21.02(b)(1). The statute defines such acts of sexual abuse as violations of any of eight penal laws, including the three cited in appellant's indictment: indecency with a child, sexual assault, and aggravated sexual assault. *See id.* § 21.02(c)(3–5). Moreover, for each violation of the three penal statutes, the indictment states a manner and means by which the charged violation occurred.

Appellant acknowledges that, as a rule, an indictment is sufficient if it tracks the penal statute in question. *Daniels v. State*, 754 S.W.2d 214, 218 (Tex. Crim. App. 1988). However, he contends that section 21.02 falls outside this general rule because—by incorporating other penal statutes—it is not "completely descriptive of the offense," and therefore requires more information to give proper notice. *See Haecker v. State*, 571 S.W.2d 920, 921 (Tex. Crim. App. 1978). We agree that, had the indictment merely tracked the language of section 21.02(b), which refers to "two or more acts of sexual abuse," it could have been insufficient to notify appellant what conduct the State was relying on as acts of sexual abuse. However, here the State identified the three statutes on which it was relying and then went further, describing the manner and means by which each of those statutes was purportedly violated. We conclude the State sufficiently expanded its tracking of the statute to make it "completely descriptive of the offense." *See id.*

We understand the gist of appellant's complaint to be that the State alleged— and gave him notice of in discovery and pre-trial filings—multiple acts that "fit" the

violations pleaded in the indictment, but he did not know which of the multiple acts would be relied upon to prove the indictment's charge.[6] He wanted more specific information about the individual acts to which the indictment alleged, stating that "the only defense to this sort of prosecution is to know specifically when, where, and how the particular event occurred so as to dispute those facts."

The State's pleading obligations in a continuous sexual abuse case reflect the nature of that offense. The court of criminal appeals has explained that "the objective of [section 21.02] was to hold a defendant criminally liable through a single conviction for all of the sexual acts transpiring between him and the victim during a designated period of time." *Price v. State*, 434 S.W.3d 601, 608 (Tex. Crim. App. 2014). The focus of the offense is the pattern of abuse over a period of time. *Id.* at 609. Thus, we have explained:

> [I]t is the commission of two or more acts of sexual abuse over the specified time period—that is, the pattern of behavior or the series of acts—that is the actus reus element of the offense as to which the jurors must be unanimous in order to convict. The individual acts of sexual abuse that make up this pattern of behavior or series of acts are not themselves elements of the offense, but are merely evidentiary facts, the manner and means by which the actus reus element is committed.

*Perez v. State*, No. 05-12-00377-CR, 2013 WL 4568296, at *6 (Tex. App.—Dallas Aug. 26, 2013, pet. ref'd) (not designated for publication); *see also Render v. State*, 316 S.W.3d 846, 858 (Tex. App.—Dallas 2010, pet. ref'd). The State is not required

---

[6] In his brief, appellant states that "the facts of the case gave rise to several more potential incidents of abuse, some of which fell within the indictment's description."

to plead evidentiary facts that are not essential to provide notice. *Garcia v. State*, No. 05-10-00291-CR, 2011 WL 3199447, at *8 (Tex. App.—Dallas July 28, 2011, pet. ref'd) (not designated for publication). Thus, in a continuous sexual abuse case, the State is not required to plead specifics such as the dates of the underlying acts of sexual abuse or the factual support for its allegations. *McKinney v. State*, No. 05-14-01350-CR, 2016 WL 3963369, at *11 (Tex. App.—Dallas July 18, 2016, pet. ref'd) (mem. op., not designated for publication).

We conclude that appellant's indictment provided him sufficient notice of the charge against him and gave him sufficient ability to prepare to defend against that charge. We overrule his fourth issue.

### Admission of Extraneous Bad Acts

In his fifth issue, appellant contends the trial court erred in admitting evidence of extraneous bad acts because the evidence was unfairly prejudicial, of limited probative value, and potentially confusing to the jury. *See* TEX. R. EVID. 403. We review the trial court's decision to admit evidence of an extraneous offense for an abuse of discretion. *Keller v. State*, 604 S.W.3d 214, 222 (Tex. App.—Dallas 2020, pet. ref'd).

Appellant acknowledges that the code of criminal procedure allows admission of certain extraneous-offense evidence when a defendant is prosecuted, as he was, for a sexual offense involving a child under seventeen years of age. CRIM. PROC. art 38.37, § 1(a)(1)(A), § 2(a)(1)(B-E). Specifically, the statute provides that—

–19–

notwithstanding rules 404 and 405 of the Texas Rules of Evidence—evidence that the defendant has committed such a separate sexual offense may be admitted at trial "for any bearing the evidence has on relevant matters, including the character of the defendant and acts performed in conformity with the character of the defendant." *Id.* art. 38.37 § 2(b). This expanded view of relevant evidence reflects the objective of the section 21.02 offense, which was "to hold a defendant criminally liable through a single conviction for all of the sexual acts transpiring between him and the victim during a designated period of time." *Price*, 434 S.W.3d at 608.

Appellant complains specifically of evidence tending to prove sexual acts by appellant that were not included in the indictment, i.e., his digital and penile penetration of G.H.'s vagina, his contacting G.H.'s vagina with his sexual organ, and his attempts to watch her in the shower or bath. This evidence entered the record through GH.'s testimony, appellant's recorded statement, and Detective Scimone's testimony about appellant's statement.

The State argues that these Rule 403 complaints were not preserved for our review because, even if appellant raised them initially through his motion to suppress, he did not make a Rule 403 objection to any of G.H.'s trial testimony or to the recording of his statement when it was offered at trial.[7] We agree. "Texas law

---

[7] The only Rule 403 objection we find in the trial testimony itself was made during the detective's testimony but was not related to extraneous offenses. Appellant objected to Scimone's description of appellant's demeanor during the interview, including his agreement with the prosecutor that appellant was "feeling pretty bad." Counsel stated: "Object under 403 as well, and this witness's statement as to his impression of the defendant's demeanor is irrelevant." The objection was overruled.

requires a party to object every time allegedly inadmissible evidence is offered." *Jackson v. State*, No. 05-10-00763-CR, 2012 WL 592730, at *4 (Tex. App.—Dallas Feb. 23, 2012, no pet.) (mem. op., not designated for publication) (citing *Ethington v. State,* 819 S.W.2d 854, 858 (Tex. Crim. App. 1991)).

We conclude that appellant has not preserved his Rule 403 complaints for our review. We overrule his fifth issue.

## CONCLUSION

We affirm the trial court's judgment.

/Bill Pedersen, III/
BILL PEDERSEN, III
JUSTICE

Do Not Publish
TEX. R. APP. P. 47
230027F.U05

–21–



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

RICARDO BERNAL, Appellant

No. 05-23-00027-CR     V.

THE STATE OF TEXAS, Appellee

On Appeal from the 366th Judicial District Court, Collin County, Texas Trial Court Cause No. 366-83255-2022.

Opinion delivered by Justice Pedersen, III. Justices Molberg and Goldstein participating.

Based on the Court's opinion of this date, the judgment of the trial court is **AFFIRMED**.

It is **ORDERED** that each party bear its own costs of this appeal.

Judgment entered August 2, 2024