**Lorenzo Keith LaSALLE, Appellant,**

v.

**The STATE of Texas, Appellee.**

No. 07–95–0283–CR.

Court of Appeals of Texas,
Amarillo.

May 21, 1996.

Donald F. Schofield, Amarillo, for appellant.

Rebecca King, District Attorney, Laura Hamilton, John L. Owen, Assistant District Attorneys, Amarillo, for appellee.

Before REYNOLDS, C.J., and BOYD and QUINN, JJ.

BOYD, Justice.

In three points of error, appellant Lorenzo Keith LaSalle challenges his conviction of aggravated sexual assault and the jury-assessed punishment of 75 years in the Institutional Division of the Texas Department of Criminal Justice. In those points, he contends the trial court erred in not granting his motion 1) to suppress his written confession because of failure to comply with the requirements of article 38.22 of the Code of Criminal Procedure, 2) to suppress evidence derived from a warrantless search, and 3) to disqualify the 47th District Attorney's Office.

K.C.B, the victim in this case, testified that on April 13, 1994, she was asleep in her bedroom when she heard something break. At that time, someone came into her room and began to choke her. As she struggled to break free, the assailant struck her, causing her to "black out." When she awakened, she was being dragged into the living room of her home. After being dropped there, she was dragged into the hallway where the assailant took off her clothes, but left her shirt covering her face. The assailant then licked her private areas, attempted penile penetration, and inserted his fingers into her vagina.

Sergeant Greg Soltis of the Amarillo Police Department was called and collected evidence at the scene of the assault. He obtained, among other things, photographs and a cast of footprints found outside the home. The shoes appeared to be "tennis shoes" with an unusual tread. After examining the footprints, Officer Perry Gilmore asked a juvenile detective if he "knew of any young juveniles or young offenders who might live in the area that he might consider a good suspect in this crime." As a result of that inquiry, appellant's name was suggested.

After Sergeant Soltis briefed them about the footprint and other evidence at the crime scene, Officer Gilmore and Detective Susan Smith walked down the alley from the crime scene to appellant's residence and as they did so, they could see and followed similar shoe print impressions in the alley dirt. As a result of their journey, the officers knocked on appellant's door around 8:30 or 9:00 a.m.

Because they were not in uniform at the time appellant came to the door, the officers identified themselves as police officers and requested permission to enter the house, which was granted. Officer Gilmore then requested permission to search the house and, in response to appellant's query why the request was made, the officer told him "that there had been some thefts in the neighborhoods, been some prowlers in the neighborhood and that I was looking for evidence in connection with incidents like that."

Appellant gave his consent to a search and, after receiving permission to do so, Officer Gilmore looked in drawers, under couches and beds, and discovered several items, including a pair of tennis shoes with the same pattern as the footprints at the crime scene, clothing similar to what the victim described the assailant as wearing, a knife, and drug paraphernalia. As a result of the search, the officers took appellant to the Amarillo Police Department where Detective Smith escorted him to an interview room.

Upon their arrival at the interview room around 11:13 a.m., Detective Smith testified that she gave appellant a copy of the "rights form" from which she read the statutory warnings required by article 38.22 of the

Code of Criminal Procedure.[1] The warnings are listed at the top of appellant's statement which was later admitted into evidence. Detective Smith testified that at the end of each of the warnings, she asked appellant whether he understood and agreed to waive each one of his rights therein protected. She averred that:

I explained the fifth right, about terminating the interview at any time and I asked him if he understood what the word terminated meant and he indicated that he did, and I asked him what that was and he said that he had the—he could stop at any point and he didn't have to talk to me if he didn't want to.

Detective Smith began the interrogation of appellant but, after talking with appellant for some time, felt she was "getting part of the story, but not all of the story," so she left the interview room and asked two other detectives, Hugg and Porter, to "visit with" appellant. Only five or ten minutes elapsed from the time Detective Smith left the room and the time the other two officers entered the room. After the continuation of the interrogation by the officers, appellant decided to give a statement, which he dictated at 2:07 p.m. to Detective Hugg. Hugg testified that when he began questioning appellant, he did not repeat the statutory warnings as he knew they had already been given to appellant. At no time did appellant ask for food, drink or medical attention, and he never asked to terminate the interview.

In his first point of error, appellant contends the trial court erred in not suppressing his confession because "the tendered statement did not comply with the requirements of Article 38.22, Texas Code of Criminal Procedure." Section two of article 38.22 provides:

No written statement made by an accused as a result of custodial interrogation is admissible as evidence against him in any criminal proceeding unless it is shown on the face of the statement that:

(a) the accused, prior to making the statement, either received from a magistrate the warning provided in Article 15.17 of this code or received from the person to whom the statement is made a warning that:

(1) he has the right to remain silent and not make any statement at all and that any statement he makes may be used against him at his trial;

(2) any statement he makes may be used as evidence against him in court;

(3) he has the right to have a lawyer present to advise him prior to and during any questioning;

(4) if he is unable to employ a lawyer, he has the right to have a lawyer appointed to advise him prior to and during any questioning; and

(5) he has the right to terminate the interview at any time; and

(b) the accused, prior to and during the making of the statement, knowingly, intelligently, and voluntarily waived the rights set out in the warning prescribed by Subsection (a) of this section.

Tex.Code Crim.Proc.Ann. art. 38.22, § 2 (Vernon 1979).

The essence of appellant's argument under his first point is that because Detective Smith did not complete the interrogation and was not the person who actually reduced the result of that interrogation to writing, the statutory warnings given by her were not sufficient and the warnings must have been specifically given again by the officers who actually reduced the confession to writing.

▆ Article 38.22 precludes the use of statements which result from custodial interrogation without compliance with its procedural safeguards. *Morris v. State*, 897 S.W.2d 528, 530 (Tex.App.—El Paso 1995, no pet.). The State may not use statements stemming from custodial interrogation unless it demonstrates the use of procedural safeguards effective to secure the privilege against incrimination. *Id.* Inasmuch as there was obviously an interrogation in this case, the question actually presented here is

---

**1.** All further references to article numbers will be to those articles in the Texas Code of Criminal Procedure.

whether the warnings that were given were adequate to protect this right and to comply with the statute.

■ The trial judge is the sole and exclusive trier of fact at a hearing on a motion to suppress and, absent a showing of an abuse of discretion, the trial court's findings will not be disturbed. *Romero v. State,* 800 S.W.2d 539, 543 (Tex.Crim.App.1990); *Freeman v. State,* 723 S.W.2d 727, 729 (Tex.Crim. App.1986). The trial judge is the sole and exclusive judge of the credibility of witnesses and the weight to be given their testimony. *Id.* As an appellate court, we do not engage in our own factual review, but simply decide whether the trial court's findings are supported by the record. If the findings are supported by the record, we are not at liberty to disturb them, and address only whether the trial court improperly applied the law to the facts. *Id.*

■ At the top of the sheet of paper on which Hugg wrote appellant's statement are the words

Statement of *Lorenzo Keith Lasalle,* taken on the *14th* day of *April, 1994,* at *2:07* p.m. I *Lorenzo Keith Lasalle* was warned at *200 E. 3rd,* Amarillo, *Potter* County, Texas by Officer *Det. S. Smith,* the person to whom I am making this statement prior to any questioning of me by a peace officer:[2] * * *

The remainder of the typed paragraph at the top of the sheet informed the reader, appellant LaSalle, of his rights pursuant to article 38.22. Directly under this typewritten portion is the handwritten statement of appellant wherein he admitted entering the home and pushing the girl. It is undisputed that although Detective Smith was not actually present when the statement was reduced to writing and signed by appellant, at the beginning of the interrogation she had read and explained these article 38.22 rights to appellant. The officers present in the room at the time the interrogation was completed and appellant's statement was reduced to

writing were Hugg and Porter, each of whom signed the statement as "witnesses."

Detective Hugg testified that he (Hugg) wrote the statement at appellant's direction and, before he asked appellant to sign the statement, he "had a question and answer session with [appellant]." Hugg testified that "I pointed to the typed portion and told him that those were the rights that he had received earlier and I pointed to where I had started writing and said that this is where I started your statement." When appellant had no questions, Hugg asked him to read the statement and handed the statement to him. When asked how long it took appellant to read the statement, Hugg replied "a few minutes," then stated that he asked appellant to read a couple of lines to him to make sure it was what appellant wanted to say. It was at this point, and after perusing the statement articulating his article 38.22 warnings in writing, that appellant signed the statement.

In *Lugo–Lugo v. State,* 650 S.W.2d 72 (Tex.Crim.App.1983), the appellant contended the trial court erred in admitting his confession because he was not warned by the person to whom his statement was made as required by article 38.22. *Id.* at 82. The record revealed that the appellant was warned of his statutory rights by Officer Barrio in the presence of Officers Hilbert and Ybarra. Officer Barrio then left the room before a statement was made and the appellant's statement was subsequently taken by the other officers. Without an extended discussion, and in finding the appellant's contention was "without merit," the court commented, "[i]t is of no moment that Mr. Barrio left the interview room after appellant was warned and that Mrs. Hilbert and Mrs. Ybarra proceeded to take the statement of appellant." *Id.* at 83.

It is noteworthy that as in this case, the officer who actually gave initial oral warnings in *Lugo–Lugo* was not present when the statement was reduced to writing and executed by the appellant. The difference, of course, between the facts in this case and

2. We note that when the State attempted to admit a copy of the statement into evidence, appellant's counsel stated, "I will not object to that

being introduced for purposes of this hearing and I'll stipulate as to what it says."

those in *Lugo–Lugo* is that in the instant case, the officers who completed the interrogation, and by their actions again emphasized the statutory warnings prior to appellant actually signing the statement, were not physically present during the initial oral recitation of the article 38.22 rights. Even so, the rationale of the *Lugo–Lugo* decision is that the absence of the officer (who initially gave the rights orally) at the time the statement is reduced to writing does not prevent its validity or receipt into evidence.

Additionally, Detective Hugg testified that prior to the time appellant signed the confession, Hugg, the officer to whom the statement was made, provided appellant with a copy of the statutory warnings, previously read to him only by Detective Smith, gave him an opportunity to read them, then asked if he had any questions.

Under article 38.22, a written confession of the type obtained here is not admissible unless it is signed. *Allridge v. State*, 762 S.W.2d 146, 158 (Tex.Crim.App.1988), *cert. denied*, 489 U.S. 1040, 109 S.Ct. 1176, 103 L.Ed.2d 238 (1989). In *Campbell v. State*, 172 Tex.Crim. 431, 358 S.W.2d 376 (1962), the appellant was not warned by the officer prior to the time he orally confessed to the crime, but he was "duly warned prior to his signing the confession...." *Id.* at 378. The court held that the "statement alleged to be the confession does not become his until his signature is affixed thereby." *Id., citing De Beauford v. State*, 95 Tex.Crim. 398, 254 S.W. 572 (1923). As a result, the confession was not obtained, thereby enabling it to be admitted into court, until appellant signed the statement. *Id.; See Nehman v. State*, 721 S.W.2d 319, 323 n. 2 (Tex.Crim.App. 1986). Clearly, in this case, appellant could have refused to sign the sheet of paper after reading typed written warnings at the top and/or the handwritten statements he later claimed were not true. He chose not to do so and did not sign the statement until after his attention was again directed to the statutory warnings at the beginning of the statement.

We also note that appellant testified at the hearing on the motion to suppress. He admitted that at the beginning of his interrogation, Detective Smith read the statutory warnings to him "and I signed it." Appellant said Smith then returned about fifteen minutes later and when she began asking him about the sexual assault, he told her he knew nothing about it and was arrested for only a narcotics violation. Although he contended the statement was not "voluntary," he made no claims of physical mistreatment. He also said he was in the interview room for six hours and because he thought the police were "playing a game" with him, he "started playing along," and "started saying the stuff that was said in the statement, which is not true." As the prosecutor read through the statement line by line, appellant admitted to the truth of some but not all of the statements, explaining he was in the house to commit a theft. When asked whether the only statements that were untrue were the statements that "make[ ] you a first-degree felon," appellant said "yeah." Appellant also admitted to having confessed in writing to several other burglaries and to being aware of the consequences of making such a confession. He never requested counsel at any time during the interrogation.

In *Dunn v. State*, 721 S.W.2d 325 (Tex. Crim.App.1986), a magistrate had given the appellant the statutory warnings in an unrelated aggravated sexual assault case, and a police officer gave the required statutory warnings to the appellant again before questioning him about a murder. The appellant was allowed to write his statement on the statement form in his jail cell after requesting to do so. Upon returning to the jail cell, the officer took the signed statement and appellant to his office to review the statement. The officer again warned the appellant before questioning him about the statement. A later questioning session was tape recorded. When the appellant testified at the hearing on the motion to suppress, he stated that the only reason he wrote out his confession and consented to the tape recorded interview session was because he was led to believe that if he cooperated and told the authorities what he thought they wanted to hear, he would not be subject to the death penalty and "that would be the end of it." *Id.* at 338.

On appeal, the appellant claimed he should have been "rewarned" before the tape recorded interview commenced. The court held that neither our constitutional nor our statutory law requires a defendant be rewarned when there is a transition from questioning regarding one offense to questioning about another offense, and it "stands to reason that a rewarning is not required where the interrogation is only a continuation about the same offense." *Id.* at 338.

In *Allridge,* the appellant claimed the officer who took his confession did not give him article 38.22 warnings prior to commencing a custodial interrogation, but did give the necessary warnings just before appellant read and signed his confession. 762 S.W.2d at 157. The court took note that before this questioning session, the defendant had received warnings when he was arrested and from a magistrate two days prior to the custodial interrogation, then was warned twice more when questioned in connection with other offenses. The court also noted the confession was not "obtained" until the appellant signed the statement, then cited *Dunn* in holding that under these circumstances, admission of the statement did not violate article 38.22.

Under the interpretation of article 38.22 in cases such as *Lugo–Lugo* and their progeny, and under the record before us, appellant was sufficiently advised of his rights in compliance with article 38.22 before he executed the confession. All the rights listed in that statute were included in the warning read by Detective Smith and subsequently emphasized and pointed out by Detective Hugg, one of the officers present and before whom appellant actually signed the statement. Appellant, an adult who admitted having experience with and knowledge of the consequences of such a statement, does not claim that he was confused or misled and does not assert that he did not understand his rights. He merely claims he was "not afforded the mandated, statutory protections set out in Article 38.22 ..." and was thereby, "significantly harmed" by admission of the statement at trial. In other words, appellant complains of "technical noncompliance" with the statute. *See Eddlemon v. State,* 591 S.W.2d 847, 850

(Tex.Crim.App. [Panel Op.] 1979). Exclusion based on Hugg and Porter's failure to orally reiterate the statutory warnings when they entered the interview room even though those warnings were again pointed out to, and read by, appellant prior to his execution of the statement, "reflects the feeling that the requirements of *Miranda* have become more a ritualistic formalism than a means to protect the underlying constitutional privilege." *Id., citing* Bubany, *The Texas Confession Statute: Some New Wine in the Same Old Bottle,* 10 Tex.Tech.L.Rev. 67, 73 (1978).

In light of the foregoing authorities and the circumstances surrounding the statement made by appellant, appellant's constitutional privilege not to incriminate himself was protected. Thus, the trial court's finding that the confession was "freely and voluntarily made after proper warnings" is supported by the record and the trial court properly applied the law to the facts. Appellant's first point of error is overruled.

In his second point of error, appellant contends the trial court should have suppressed the evidence obtained from the search because it was conducted in a manner violative of his rights under the Fourth and Fourteenth Amendments to the United States Constitution, article I, section 9 of the Texas Constitution, and article 1.06 of the Code of Criminal Procedure. In making our decision of this challenge, we review the evidence presented at the suppression hearing with appropriate deference to the trial court.

Appellant testified that two police officers "banged" on his door at 8:00 a.m. They identified themselves as police officers and asked if they could ask him some questions. When he inquired why, the officers said they were investigating a report of a "prowler." Appellant said the officers then walked into the house uninvited and asked him where he was the night of the assault. According to him, he replied he had been home the entire night, and that his neighbors "could verify that. And then they asked me to go over there and get them." Upon his return from his neighbor's apartment, he continued, the officers were looking under his couch and had found his shoes, a metal container with marijuana in it, and a butterfly knife. The

officers then told him he was under arrest because of the narcotics and the knife.

The basic purpose of the Fourth Amendment to the federal constitution and article I, section 9 of the Texas constitution is to safeguard the privacy and security of individuals against arbitrary invasions by governmental officials. *Juarez v. State,* 758 S.W.2d 772, 775 (Tex.Crim.App.1988), *citing Kolb v. State,* 532 S.W.2d 87, 89–90 (Tex. Crim.App.1976). A search conducted without a warrant is *per se* unreasonable, subject to only a few specifically established and well-delineated exceptions. *Id.,* citing *Katz v. United States,* 389 U.S. 347, 357, 88 S.Ct. 507, 514, 19 L.Ed.2d 576 (1967). One of the circumstances that waive the protections afforded by the Fourth Amendment and article I, section 9 is consent.

The burden of proving that such consent was freely and voluntarily given is upon the prosecution. *Juarez,* 758 S.W.2d at 775. Consent may be ineffective if induced by a show of force or other coercive surroundings, so the prosecution must show by clear and convincing evidence that the consent given was positive and unequivocal, and there must not be duress or coercion, either express or implied. *Johnson v. State,* 803 S.W.2d 272, 287 (Tex.Crim.App.1990), *cert. denied,* 501 U.S. 1259, 111 S.Ct. 2914, 115 L.Ed.2d 1078 (1991); *Juarez,* 758 S.W.2d at 775. While this burden cannot be discharged by showing no more than acquiescence to a claim of lawful authority, a court may consider that the consent was obtained in an environment with few police officers and without the use of weapons. *Johnson v. State,* 803 S.W.2d at 287; *Juarez,* 758 S.W.2d at 775 (cites omitted). For example, the fact that a person is under arrest does not, in and of itself, prevent free and voluntary consent from being given. *Juarez,* 758 S.W.2d at 775, *citing Meeks v. State,* 692 S.W.2d 504, 509 (Tex.Crim.App.1985).

Additionally, because the trial court is the sole fact finder at a hearing on a motion to suppress and may choose to believe any or all of the witnesses' testimony, we are not at liberty to disturb any finding which is supported by the record. *Johnson,* 803 S.W.2d at 287. In the instant case, appellant's testimony conflicts with Detective Smith and Officer Gilmore's testimony on whether appellant gave the officers permission to enter and search the house, and whether this search began when appellant left his apartment to talk to his neighbors. The detectives' versions of the events at appellant's home do not contradict one another. Because the testimony of the detectives would clearly establish that appellant's consent to search was freely and voluntarily given, and because the trial court could choose to disbelieve any or all of appellant's testimony, the record is sufficient to support the trial court's finding that consent was freely and voluntarily given. Appellant's second point of error is overruled.

In his third point of error, appellant contends the trial court erred in not granting his "Motion to Disqualify the 47th District Attorney's Office as Prosecuting Attorney." He posits that at the time of his trial, the duly elected district attorney of the 47th judicial district was deceased, the designated first assistant district attorney was, therefore, "the principal officer of the jurisdiction," and no successor district attorney had been appointed by the Governor of the State of Texas. He cites article 2.07 of the Code, which provides

(a) Whenever an attorney for the state is disqualified to act in any case or proceeding, is absent from the county or district, or is otherwise unable to perform the duties of his office, or in any instance where there is no attorney for the state, the judge of the court in which he represents the state may appoint any competent attorney to perform the duties of the office during the absence or disqualification of the attorney for the state.

(d) In this article, "attorney for the state" means a county attorney, a district attorney, or a criminal district attorney.

In response, conceding the duly elected district attorney was deceased at the time of trial, the State argues that article 2.07 "prescribes a remedy when unique circumstances prevent an elected prosecutor and his assistants from prosecuting a particular case." We agree.

In the cases relied upon by appellant, the district attorney had been disqualified to prosecute *a particular* case. *State v. May,* 270 S.W.2d 682 (Tex.Civ.App.—San Antonio 1954, no pet.) (assistant district attorney held to be disqualified because district attorney declared disqualified to prosecute and otherwise conduct certain current proceedings pending in Duval County); *Ballard v. State,* 519 S.W.2d 426 (Tex.Crim.App.1974) (due process not denied by permitting a privately retained attorney to participate in a criminal prosecution when the district attorney retains control and management of the prosecution). In fact, the court in *Ballard* held that articles 2.01 and 2.07 are only applicable when the elected district attorney is disqualified to prosecute a particular case and the district judge appoints a special prosecutor under the provisions of these statutes. *Id.* at 428.

The case at bar is more appropriately governed by article 16, section 17 of the Texas Constitution which provides that "All officers within this State shall continue to perform the duties of their offices until their successor shall be duly qualified." This provision was interpreted by the court in *Bolding v. State,* 493 S.W.2d 181 (Tex.Crim.App.1973) in which the Criminal District Attorney of Tarrant County resigned during the trial. *Id.* at 183. Two assistant district attorneys continued to represent the State in the trial after his resignation.

As does appellant in this case, Bolding contended that even though the two duly appointed assistant district attorneys continued to represent the State, the resignation of the district attorney left the State "without a representative in the courtroom" and the trial court erred in not declaring a mistrial at the time of the resignation. *Id.* at 183. Without extensive discussion, other than noting that the purpose of article 16, section 17 of the Texas Constitution "is to insure, insofar as possible, that there be no cessation in government. It continues the officer in the office with all the powers incident thereto until his successor has been duly qualified," the *Bolding* court laconically held "[N]o error is shown." *Id.* at 183–84. Although the court did not engage in any depth of discus-

sion, it is apparent that it considered the assistant district attorneys constitutionally qualified to continue the usual operations of a district attorney's office even in the absence of a district attorney. The rationale must be that the constitutional provision is intended to ensure that there be no cessation in government and that in the event of the resignation or death of an occupant of an office, the officer's previously qualified assistants or employees may continue the operation of the office pending selection of a successor. That rationale and holding is peculiarly applicable to the question before us.

This case is also properly governed by Government Code section 601.002(a) which provides that "The first assistant or chief deputy of a public office in which a physical vacancy occurs shall conduct the affairs of the office until a successor qualifies for the office." Tex.Gov't Code Ann. § 601.002(a) (Vernon 1994). Appellant acknowledges that the first assistant to the deceased district attorney continued to serve, but argues the authority granted by the statute is limited to the first assistant district attorney alone, who should have been present at his trial and directing his prosecution. We disagree.

■ The clear implication of these statutory and constitutional provisions is that in the event of a vacancy created by the death or resignation of a district attorney, to ensure the orderly continuation of the operation of that office, all qualified assistants are authorized to continue to fulfill the obligations of their office. There is nothing in this record to show that First Assistant District Attorney Rebecca King, Assistant District Attorney Laura Hamilton and Assistant District Attorney Lance Larison were not so qualified. Each district attorney was performing the duties of the office under color of authority; therefor, they were at least "officers *de jure*" if not "officers *de facto.*" *Cook v. State,* 146 Tex.Crim. 523, 176 S.W.2d 941, 943 (1944). Appellant cannot collaterally attack their authority to prosecute the case. *Id.* Appellant's third point of error is overruled.

In summary, all of appellant's points are overruled and the judgment of the trial court affirmed.

Concurring opinion by QUINN, J.

Dissenting opinion by REYNOLDS, C.J.

QUINN, Justice, concurring.

Regarding points of error two and three, I fully concur in the opinion of Justice Boyd. As to point one, however, I conclude that Officer Hugg satisfied the prerequisites of article 38.22, § 2 of the Texas Code of Criminal Procedure. By directing appellant's attention to the article 38.22, § 2(a)(1)–(5) admonishments appearing in the written confession and by informing appellant that "those are the rights that had previously been gone over with him" *before* appellant read and signed the confession, Hugg did that demanded by the statute. *See Campbell v. State,* 358 S.W.2d 376, 378 (Tex.Crim.App.1962) (holding that warnings uttered before the accused affixed his signature to the written confession sufficed). That the confession named an officer other than Hugg as the one who informed appellant of his *Miranda* rights matters not. At most, the mistake did nothing other than remove the police conduct from the realm of literal compliance into the realm of substantial compliance, and substantial compliance is all that was needed. *See Hardesty v. State,* 667 S.W.2d 130, 135 (Tex.Crim.App. 1984) (rejecting an article 38.22, § 2 attack because the warnings "substantially complied" with the statutory requirements).

REYNOLDS, Chief Justice, dissenting.

Appellant Lorenzo Keith LaSalle correctly contends with his first point of error that the trial court erred in not granting his motion to suppress his written confession because of the failure to comply with the requirements of Article 38.22, § 2(a) of the Texas Code of Criminal Procedure Annotated (Vernon 1979). Consequently, I would sustain the point, reverse the judgment, and remand the cause to the trial court. Because my brethren do not do so, I respectfully dissent.

It is undisputed that appellant's written confession was secured as the result of custodial interrogation after he received from Detective Susan Smith the warnings mandated by Article 38.22, § 2(a), *supra.* The confession itself recites that appellant "WAS WARNED ... BY OFFICER *Det. S. Smith,* THE PERSON TO WHOM I AM MAKING THIS STATEMENT...." However, it is also undisputed that the confession was given to, and reduced to writing by, Detective Hoyt T. Hugg, who was not present when appellant was given the warnings by Detective Smith, and who himself did not give any warning to appellant prior to taking the confession. And it is further undisputed that Detective Smith was not present when the confession was given.

When the confession was offered into evidence during the trial, appellant unsuccessfully objected on the ground that the confession did not comply with the requirements of Article 38.22, *supra,* because the warnings were not administered by either a magistrate or the person to whom the confession was made. The objection invoked the provisions of the article, which provide that:

> No written statement made by an accused as a result of custodial interrogation is admissible as evidence against him in any criminal proceeding unless it is shown on the face of the statement that:

> (a) the accused, prior to making the statement, either received from a magistrate the warning provided in Article 15.17 of this code or received from the person to whom the statement is made a warning that:

> \*   \*   \*   \*   \*   \*

Tex.Code Crim.Proc.Ann. art. 38.22(a) (Vernon 1979).

"It seems to have been the unbroken rule since [the original enactment of the requirement that prior to making a statement, the accused must receive the warnings from the person to whom the statement is made] that the confession must have been made to the person named therein as the person to whom it is made." *Barker v. State,* 164 Tex.Crim. 318, 299 S.W.2d 142, 143 (1957). Thus, "unless there has been a showing that the statute has been complied with, the State may not use such evidence as a criminative fact against the defendant." *Butler v. State,* 493 S.W.2d 190, 193–94 (Tex.Cr.App.1973). Without the showing, the admission of the

confession over objection is reversible error. *Barker v. State*, 299 S.W.2d at 142–43.

I, therefore, cannot concur in the majority's assertion that "[u]nder the interpretation of article 38.22 in cases such as *Lugo–Lugo* [*Lugo–Lugo v. State*, 650 S.W.2d 72 (Tex.Cr. App.1983) ] and their progeny, and under the record before us, appellant was sufficiently advised of his rights in compliance with article 38.22 before he executed the confession." Neither can I agree with their assertion that "the rationale of the *Lugo–Lugo* decision is that the absence of the officer (who initially gave the rights orally) at the time the statement is reduced to writing does not prevent its validity or receipt into evidence."

In my view, the rationale of the *Lugo–Lugo* decision is that the absence of the officer who gave the accused the article 38.22, *supra*, warnings does not render the confession inadmissible *provided* the confession is given to an officer who was present when the warnings were given. 650 S.W.2d at 83. The rationale produced a decision which is, also in my view, an aberration in that it is contrary to the mandatory requirement of article 38.22, *supra*. Be that as it may, none of *Lugo–Lugo*'s progeny, as illustrated by the majority's candid recitation of the facts of them, has gone so far to hold, contrary to the mandatory language of article 38.22, *supra*, that the absence of the officer who administered the warnings does not render the confession inadmissible when the confession was given to an officer who was not present when the warnings were administered. If article 38.22, *supra*, is to be rewritten to permit that result, it should be done by the Legislature, not this court.

Because appellant's confession obviously was not taken in compliance with the statute, its admission over objection was reversible error. Accordingly, I respectfully dissent from the overruling of appellant's first point of error.