

**NUMBER 13-17-00494-CR**

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI – EDINBURG

---

**THE STATE OF TEXAS,**                                       **Appellant,**

**v.**

**RICARDO MATA,**                                               **Appellee.**

---

**On appeal from the 93rd District Court
of Hidalgo County, Texas.**

---

# MEMORANDUM OPINION

**Before Chief Justice Contreras and Justices Benavides and Longoria
Memorandum Opinion by Justice Longoria**

The trial court granted appellee Ricardo Mata's motion to suppress. The State of Texas appeals, arguing that the trial court erred in granting the motion to suppress. We affirm in part and reverse and remand in part.

## I. BACKGROUND

The Major Crimes Unit of the Hidalgo County Sheriff's Office was notified of a kidnapping that had been reported in Zapata County, with indications that the kidnapping victim may have been in Hidalgo County. Investigators Hermelinda Chavez and Antonio Porraz were assigned to the case. Porraz met with the mother of the kidnapped child and he was present when the kidnapper called the mother to demand ransom for return of her daughter. Porraz spoke with the kidnapper, who identified himself as "El Guero." Investigators "pinged" the cell phone used to contact the kidnapped child's mother and they were able to trace the location of the phone. Surveillance was set up outside of the house where the phone was traced to, and when a male left the house and got into a vehicle, the phone's "pinged" location mirrored his movements. The investigators determined that the male driving the vehicle, Mata, was a suspect and ordered that the vehicle be stopped.

Deputy Noe Canales of the Hidalgo County Sheriff's Office located the vehicle and performed a traffic stop in his marked unit. Chavez and Porraz arrived on the scene and began to question Mata regarding the child that had been kidnapped. According to Chavez, Mata told the investigators that he would tell them the location of the child if he could leave, but that the investigators advised him he would not be released. Chavez testified that Mata was not free to leave. Mata then gave them directions to locate the kidnapped child. Once the child was located, Mata was transported to the sheriff's office in a marked unit. Chavez further testified that she met with Mata at the sheriff's office and read him his *Miranda* rights, and her partner Investigator Miguel Lopez took Mata's statement.

Porraz testified that when the child's mother came to the Hidalgo County Sherriff's Office, he was the one that spoke to "El Guero," the alleged kidnapper, on the phone. "El Guero" was seeking $300 to return the child. During their conversation, the investigators successfully worked to determine the location of the cell phone. Similar to Chavez, Porraz also testified that the location of the phone moved in sync with the vehicle located by the surveillance team, causing Porraz and Chavez to order the vehicle be stopped. When Porraz arrived, he informed Mata who they were and about the kidnapping they were investigating. Mata denied any knowledge of the kidnapping. Porraz then informed Mata that Porraz was actually the person that was on the phone speaking to the kidnapper that day and testified that Mata's "demeanor totally changed." Mata told the investigators he could tell them where the child was located if they would let him go. Porraz testified that Mata, as the primary suspect at the time, was not free to leave.

Lopez testified that Mata was already in an interview room, that Chavez had read Mata his *Miranda* rights, and that he made sure that Mata had been read those rights. Mata's initials were next to each of the *Miranda* rights that were read to him, indicating to Lopez that Mata understood and waived his rights. Lopez interviewed Mata and typed up Mata's statement; Mata again initialed his understanding of his *Miranda* rights and signed a waiver of those rights on the typed statement.

The trial court granted Mata's motion to suppress the statements made on the side of the road and at the sheriff's office. This appeal followed. *See* Tex. CODE CRIM. PROC. ANN. art. 44.01(a)(5).

## II.    MOTION TO SUPPRESS

3

By its sole issue, the State argues that the trial court erred in granting Mata's motion to suppress.

**A.      Standard of Review**

In reviewing a trial court's ruling on a motion to suppress, we employ a bifurcated standard, giving almost total deference to a trial court's determination of historic facts and mixed questions of law and fact that rely upon the credibility of a witness, but applying a de novo standard of review to pure questions of law and mixed questions that do not depend on credibility determinations. *State v. Kerwick*, 393 S.W.3d 270, 273 (Tex. Crim. App. 2013).   The record is reviewed in the light most favorable to the trial court's determination, and the judgment will be reversed only if it is arbitrary, unreasonable, or "outside the zone of reasonable disagreement." *State v. Dixon*, 206 S.W.3d 587, 590 (Tex. Crim. App. 2006).   The trial judge is the sole judge of witness credibility and the weight to be given to witness testimony.  *Ex parte Moore*, 395 S.W.3d 152, 158 (Tex. Crim. App. 2013).

**B.      Applicable Law**

*Miranda* and Article 38.22 of the Texas Code of Criminal Procedure require a defendant to be given specific warnings for statements that are the result of custodial interrogation in order to be admissible.  *See* TEX. CODE CRIM. PROC. ANN. art. 38.22; *Miranda v. Arizona*, 384 U.S. 436 (1966).

There are three types of interactions among police officers and citizens:  (1) consensual encounters, (2) investigative detentions, and (3) arrests or their custodial equivalent.  *Crain v. State*, 315 S.W.3d 43, 49 (Tex. Crim. App. 2010); *State v. Perez*, 85

S.W.3d 817, 819 (Tex. Crim. App. 2002). "An encounter is a consensual interaction which the citizen is free to terminate at any time." *Crain*, 315 S.W.3d at 49.

On the other hand, an investigative detention occurs when a person yields to the police officer's show of authority under a reasonable belief that he is not free to leave. When the court is conducting its determination of whether the interaction constituted an encounter or a detention, the court focuses on whether the officer conveyed a message that compliance with the officer's request was required. The question is whether a reasonable person in the citizen's position would have felt free to decline the officer's requests or otherwise terminate the encounter. *Id*. (internal citations omitted).

There are three exceptions to *Miranda*: (1) the public safety exception, (2) when the suspect is unaware that he or she is dealing with a state agent (i.e. undercover officer), and (3) the booking questions exception. *See New York v. Quarles*, 467 U.S. 649, 655–57 (1984) (public safety exception); *Illinois v. Perkins*, 496 U.S. 292, 294 (1990) (*Miranda* warnings not required because suspect unaware he or she was dealing with state officials); *Alford v. State*, 358 S.W.3d 647, 660 (Tex. Crim. App. 2012) (recognizing booking-question exception); *see also Hutchison v. State*, 424 S.W.3d 164, 180 (Tex. App.—Texarkana 2014, no pet.). The "public safety" exception exempts from *Miranda* those situations in which an officer has reason to believe that immediate and summary questioning are necessary to protect members of the public from serious harm. *Quarles*, 467 U.S. at 656.

**C.    Analysis**

5

The State argues that the trial court erred in suppressing three separate statements made by Mata, specifically: (1) Mata's statement to Porraz on the phone, (2) Mata's roadside statement to investigators, and (3) Mata's written statement.

### 1. Telephone Statement

When the mother of the kidnapped child came to the Hidalgo County Sheriff's Office, she received a call from the alleged kidnapper. The caller identified himself as "El Guero" and demanded payment for return of the child. Porraz received the call on behalf of the mother, alleging that he was a friend of hers and that he would be assisting her in the payment for the return of the child. According to Porraz, during the call, "El Guero" stated he "just wants his $300 that he had paid for the child and that was it." The State argues that the statements made during the phone call are admissible because they were made when Mata was not in custody. *See Wilson v. State*, 195 S.W.3d 193, 200 (Tex. App.—San Antonio 2006, no pet.) ("Because Wilson was not in custody while being questioned, the failure to advise him of his rights did not make the statements inadmissible under either *Miranda* or article 38.22."). However, Mata contends that the statements cannot be admitted because the State did not prove that he was the person on the phone, arguing that the statements are therefore "the textbook definition of hearsay."

The trial court's order granting Mata's motion to suppress specifically ordered only that the statements made on the side of the road and the written statement were to be suppressed. The court's order did not suppress any telephone statements, and therefore, the State's argument in this regard is moot.

### 2. Roadside Statements

6

The State further alleges that the statements made by Mata after his vehicle was stopped are admissible because Mata was not in custody at the time, and, even if he were in custody, the statements are admissible under the public safety exception. *See Quarles*, 467 U.S. at 656. The public safety exception recognizes that in narrow circumstances the threat to the safety of officers and the general public outweighs the need for giving *Miranda* warnings. *See Russell v. State*, 215 S.W.3d 531, 534 (Tex. App.—Waco 2007, pet. ref'd).

The trial court specifically found that: "At the time of the stop Defendant Mata was *detained* and not free to leave the side of the road by Deputy Canales. Subsequently, Investigator Chavez and Investigator Porraz arrived on site to interrogate him. Defendant Mata was not Mirandized." While the trial court does not use the word "custody," the findings of fact do state that Mata was not free to leave. Furthermore, both Chavez and Porraz testified that at the time they were questioning Mata he was not free to leave, making any interrogation custodial. *See Dowthitt v. State*, 931 S.W.2d 244, 254 (Tex. Crim. App. 1996) (holding that if a reasonable person would believe his or her freedom of movement was restrained to the degree associated with a formal arrest, an interrogation conducted during that time is custodial). Because Mata was not read his *Miranda* rights at this point, the interrogation must be within an exception in order for Mata's roadside statements to be admissible. "[R]outine inquiries, questions incident to booking, broad general questions such as 'what happened' on arrival at the scene of a crime, and questions mandated by public safety concerns are not interrogation." *State v. Ortiz*, 346 S.W.3d 127, 134–35 (Tex. App.—Amarillo 2011), *aff'd on other grounds by* 382 S.W.3d

7

367, 372 (Tex. Crim. App. 2012) (citing *Jones v. State*, 795 S.W.2d 171, 174 n.3 (Tex. Crim. App. 1990)).

The State contends that because the investigators' interrogation was for the purpose of locating the kidnapped child, the questions fall within the public safety exception. The State relies on *Quarles* and *Bryant v. State* to support this position. *See Quarles*, 467 U.S. at 655; *Bryant v. State*, 816 S.W.2d 554, 557 (Tex. App.—Fort Worth 1991, no pet.). In both *Quarles* and *Bryant,* the public safety exception applied where the officers were immediately concerned with the location of a gun or weapon that could have endangered the officers or the public. *See Quarles*, 467 U.S. at 655; *Bryant*, 816 S.W.2d at 557. Here, the officers had no indication of a weapon or gun being involved or used to endanger the safety of the public. Because the exception is a narrow one, and it has only been used in situations involving the use of guns, we decline to create an exception here that may lessen the clarity of the *Miranda* rule. *See Quarles*, 467 U.S. at 658–59. Accordingly, the trial court did not err in suppressing Mata's roadside statements.

### 3. Written Statement

The State also contends that the trial court erred in suppressing Mata's written statement because he had been properly read his *Miranda* warnings. Mata argued, and the trial court found, that because Chavez read Mata his *Miranda* warnings, but Lopez took his statement, the warnings were inadequate under article 38.22. *See* TEX. CODE CRIM. PROC. ANN. art. 38.22, § 2(a).

Chavez testified that she read Mata his *Miranda* warnings at the sheriff's office but did not have much more interaction with him because she was working on other aspects of the investigation. Lopez testified that he was advised that Mata needed to be

8

interviewed and that Lopez was to "pick up a statement from [Mata]." When Lopez first met with Mata, he made sure that Mata had already been read his rights by Chavez, and then he interviewed Mata. After his interview of Mata, Lopez typed out Mata's statement for Mata's review and signature. Prior to Mata signing the statement, Lopez read Mata his *Miranda* warnings and had him initial each warning to acknowledge his understanding and waiver of his rights. Mata then reviewed and signed the typed statement.

Mata argues that the statement is inadmissible because not only was Lopez not the one to give him the warnings, but Lopez was not present when Chavez did so. *See id.* (requiring that "the accused, prior to making the statement, either received from a magistrate the warning provided in Article 15.17 of this code or received from the person to whom the statement is made a warning. . ."). However, the State contends that the warnings given by Lopez prior to Mata signing the written statement, even after the statement had been procured, were sufficient to satisfy the requirements under article 38.22. *See Dowhitt*, 931 S.W.2d at 258–59. We agree. The Texas Court of Criminal Appeals has held that "because a written statement is not 'obtained' (because it is not admissible) until it is signed, giving the required warnings before the accused signs the statement meets the statutory requirements." *Allridge v. State*, 762 S.W.2d 146, 157–58 (Tex. Crim. App. 1988) (holding that statement was not admitted in violation of article 38.22, though defendant was not given warnings before interrogation to which statement related, when he had been given warnings several other times since arrest and was given warnings after making statement but before reading and signing it); *see LaSalle v. State*, 923 S.W.2d 819, 824 (Tex. App.—Amarillo 1996, pet. ref'd) (holding that because the written statement was not admissible until it was signed, and LaSalle was warned prior to

9

signing his confession, but after he orally confessed, the admission of the written statement did not violate article 38.22).

In *LaSalle*, the appellant was read his *Miranda* warnings by one detective, but a different detective "actually reduced the result of that interrogation to writing." *LaSalle*, 923 S.W.2d at 822. LaSalle argued that the actions of the detectives were not in compliance with article 38.22. *Id*. The court in *LaSalle* held that "the confession was not obtained, thereby enabling it to be admitted into court, until appellant signed the statement." *Id*. at 824 (citing *Campbell v. State*, 358 S.W.2d 376, 378 (Tex. Crim. App. 1962)). The court found the appellant's written statement admissible because

> [A]ppellant was sufficiently advised of his rights in compliance with article 38.22 before he executed the confession. All the rights listed in that statute were included in the warning read by [the first detective] and subsequently emphasized and pointed out by [the second detective], one of the officers present and before whom appellant actually signed the statement.

*Id*. at 825. Here, after interviewing and typing Mata's oral statement, Lopez re-read Mata his *Miranda* warnings and obtained Mata's initials next to each warning, which were on the face of the typed statement, and then Mata signed the typed statement.[1] Because Mata was given his *Miranda* warnings prior to voluntarily signing the typed statement, we find that the statement does not violate article 38.22, and accordingly, the trial court erred in granting Mata's motion to suppress the written statement. *See Allridge*, 762 S.W.2d at 158.

### III. CONCLUSION

---

[1] Mata further argues that the rights as read to him by Chavez did not include the "knowingly, voluntarily, and intelligently" requirement; however, that language is clearly contained within the acknowledged *Miranda* warnings on the face of the typed statement.

10

We affirm the trial court's judgment insofar as it suppressed the roadside statements but reverse the judgment of the trial court as to the written statement, and this case is remanded to the trial court for further proceedings consistent with this opinion.

NORA L. LONGORIA
Justice

Do not publish.
TEX. R. APP. P. 47.2(b).

Delivered and filed the
11th day of July, 2019.