

**NUMBER 13-18-00444-CR**

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI – EDINBURG

**HECTOR JAVIER RODRIGUEZ ALVARADO,**                                         **Appellant,**

**v.**

**THE STATE OF TEXAS,**                                         **Appellee.**

**On appeal from the 275th District Court
of Hidalgo County, Texas.**

# MEMORANDUM OPINION

**Before Justices Benavides, Longoria, and Perkes
Memorandum Opinion by Justice Longoria**

Appellant Hector Javier Rodriguez Alvarado was convicted on three counts of capital murder, all first-degree felonies. *See* TEX. PENAL CODE ANN. §§ 19.03(a)(2), (7). By five issues, he argues that: (1) he should have been acquitted based on the doctrine of collateral estoppel; (2) the trial court erred by admitting his written statement; (3) the

trial court erred by not instructing the jury regarding the voluntariness of Alvarado's statement; (4) the trial court erred by failing to instruct the jury on duress; and (5) his convictions constituted a double jeopardy violation. We reverse and render judgment vacating Alvarado's convictions for capital murder as alleged in counts two and three and affirm the remaining judgment for capital murder as alleged in count one.

## I. BACKGROUND

In May 2015, the police were called to investigate a burning vehicle with two corpses in the trunk—Jose Luis Salinas Torres and Lazaro "Nacho" Alejandro Martinez Esparza. Several weeks later, Investigator Miguel Lopez received a tip that Alvarado might have been involved with the killings. Subsequently, Alvarado gave a non-custodial affidavit and was released afterward. In the affidavit, Alvarado admitted that he and Esparza were involved in transporting and selling drugs between Mexico and the United States.

Lopez, through the investigation, learned that the reporting witness, Carlos Palacios, was present on the day of the killing. According to Palacios, there were two other people present at the time of the murder: Alvarado and Edwin Salinas. Salinas admitted to killing the two men and admitted to burning their bodies in the car using an accelerant; Salinas also implicated Palacios and Alvarado as co-participants in the murders.

In September 2015, an arrest warrant for Alvarado was executed. Alvarado gave a custodial statement, which was later admitted into evidence at trial over his objection. In his statement, Alvarado admitted that he knew Torres was a drug-dealer who frequently carried a gun. Nevertheless, Alvarado proceeded to arrange a drug deal between

2

Salinas, Esparza, and Torres. According to Alvarado, when he arrived at the deal, he saw that Salinas was accompanied by Palacios. Alvarado admitted that he was aware that Palacios was a "psycho" gang member known to use cocaine. However, Alvarado testified that Palacios and Salinas shot the Torres and Esparza and then placed them in the trunk of the car.

Amanda Ruiz, Alvarado's girlfriend, testified that she noticed a set of teeth on the table of Salinas's home. According to Ruiz, Alvarado told her that it had come from "one of the guys that got killed."

Bobbie Medrano, Salinas's wife, testified that the day after the murder, Alvarado and Salinas were laughing as they held items taken from the Torres and Esparza. According to Medrano, Alvarado and Salinas also argued over who would keep Torres's and Esparza's property.

Alvarado was charged with one count of capital murder of multiple persons (count one) and two counts of capital murder in the course of a felony (counts two and three). *See id.* §§ 19.03(a)(2), (7). In June 2018, a jury found Alvarado guilty on all three counts, and the trial court sentenced him to life imprisonment without the possibility of parole. This appeal ensued.

## II. COLLATERAL ESTOPPEL

In his first issue, Alvarado argues that he should be acquitted on all three counts because of collateral estoppel. More specifically, Alvarado argues that the present issue of whether he committed the offense of capital murder has already been previously litigated at a revocation hearing.

### A. Standard of Review and Applicable Law

3

"The doctrine of collateral estoppel is embodied within the constitutional bar against double jeopardy. But the two are not identical. Double jeopardy bars any retrial of a criminal offense, while collateral estoppel bars any retrial of specific and discrete facts that have been fully and fairly adjudicated." *Ex parte Watkins*, 73 S.W.3d 264, 267–68 (Tex. Crim. App. 2002). Collateral estoppel bars

> successive litigation of an issue of fact or law that is actually litigated and determined by a valid and final judgment, and . . . is essential to the judgment. If a judgment does not depend on a given determination, relitigation of that determination is not precluded. . . . A determination ranks as necessary or essential only when the final outcome hinges on it.

*State v. Waters*, 560 S.W.3d 651, 661 (Tex. Crim. App. 2018) (quoting *Bobby v. Bies*, 556 U.S. 825, 834 (2009)); *see York v. State*, 342 S.W.3d 528, 553 (Tex. Crim. App. 2011) (Womack, J., concurring) (noting that res judicata "encompasses claim preclusion and issue preclusion").

## B. Analysis

Back in May 2015, before trial of the present case, Alvarado was convicted and placed on community supervision for an unrelated felony. The State subsequently filed a motion to revoke his supervision, alleging numerous offenses, such as failing to pay various required fees, failing to complete service community hours, failing to complete required counseling programs, and committing the offense of capital murder as alleged in the current case. In its ruling on the motion to revoke supervision, the trial court stated

> The Court is going to find by a preponderance of the evidence that he failed to perform his community service hours and he also failed to participate in the marriage counseling classes condition, that he violated condition number 29 and condition number 21. The other conditions, the State failed to prove by a preponderance of the evidence

The "other conditions" included committing the new offense of capital murder.

Alvarado filed a pretrial application for habeas relief based on collateral estoppel. Similar to the current appeal, Alvarado argued that the issue of whether Alvarado had committed capital murder had already been litigated during a previous revocation hearing. During the habeas hearing, the trial court declared that it "made no finding on that issue." Nevertheless, Alvarado argued that the trial court had made an "implied ruling of not true" as to the capital murder offense. The trial court ultimately denied habeas relief.

Concerning revocation hearings and collateral estoppel, the Texas Court of Criminal Appeals has held, "[b]ecause of the highly discretionary nature of revocation proceedings, and because neither the finding of 'true' or 'not true' compels any particular result on the revocation proceedings, collateral estoppel principles are not implicated." *Waters*, 560 S.W.3d at 661. Thus, the revocation allegations do not bar the current prosecution. *See id.* We overrule Alvarado's first issue.

### III. MOTION TO SUPPRESS

In his second issue, Alvarado argues that the trial court erred in admitting his written, custodial statement because (1) Alvarado was arrested without probable cause; (2) Alvarado's custodial statement was taken in violation of the procedural protections of Article 38.22 of the Texas Code of Criminal Procedure, *see* TEX. CODE CRIM. PROC. ANN. art. 38.22; and (3) Alvarado's custodial statement was taken in violation of Article 15.26 of the Texas Code of Criminal Procedure, *see id*. art. 15.26.

#### A. Standard of Review and Applicable Law

In reviewing a trial court's ruling on a motion to suppress, we employ a bifurcated standard, giving almost total deference to a trial court's determination of historic facts and mixed questions of law and fact that rely upon the credibility of a witness, but applying a

5

de novo standard of review to pure questions of law and mixed questions that do not depend on credibility determinations. *See State v. Kerwick*, 393 S.W.3d 270, 273 (Tex. Crim. App. 2013); *Amador v. State,* 221 S.W.3d 666, 673 (Tex. Crim. App. 2007). The trial judge is the sole trier of fact and judge of the credibility of the witnesses and the weight to be given their testimony. *See Wiede v. State,* 214 S.W.3d 17, 24–25 (Tex. Crim. App. 2007). The record is reviewed in the light most favorable to the trial court's determination, and the judgment will be reversed only if it is arbitrary, unreasonable, or "outside the zone of reasonable disagreement." *State v. Dixon*, 206 S.W. 3d 587, 590 (Tex. Crim. App. 2006).

> Rule 33.1(a) of the Texas Rules of Appellate Procedure provides that a complaint is not preserved for appeal unless it was made to the trial court "by a timely request, objection or motion" that "stated the grounds for the ruling that the complaining party sought from the trial court with sufficient specificity to make the trial court aware of the complaint, unless the specific grounds were apparent from the context." Likewise, under Rule 103 of the Texas Rules of Evidence, error may not be predicated upon a ruling which admits or excludes evidence unless "a timely objection or motion to strike appears of record, stating the specific ground of objection, if the specific ground was not apparent from the context."

*Resendez v. State*, 306 S.W.3d 308, 312 (Tex. Crim. App. 2009)

**B. Analysis**

**1. Sub-Issues One and Three: Illegal Arrest and Article 15.26**

We first address Alvarado's first and third sub-issues. Concerning his first sub-issue, Alvarado argues that his arrest was illegal because he was arrested without probable cause. According to Alvarado, the arrest warrant that led to his arrest was based on a clearly deficient affidavit, meaning the custodial statement was inadmissible as a

6

fruit of the poisonous tree.[1]  *See Wong Sun v. United States*, 371 U.S. 471, 487 (1963). Under his third sub-issue, Alvarado argues that he was arrested without being informed of the authority under which his arrest was executed or without being made aware that an arrest warrant had even been issued.  *See* TEX. CODE CRIM. PROC. ANN. art. 15.26 ("In executing a warrant of arrest, it shall always be made known to the accused under what authority the arrest is made.").  The State argues that Alvarado has failed to preserve these two sub-issues for appellate review.  We agree with the State.

During the suppression hearing, Alvarado's issues centered on the State's alleged failure to properly issue him his *Miranda* rights in accordance with Article 38.22.  *See* TEX. CODE CRIM. PROC. ANN. art. 38.22.  Alvarado also argued that he lacked an adequate understanding of the effect of waiving his rights.  Nowhere in his motion to suppress or during the hearing did Alvarado mention Article 15.26 or his custodial statement being the fruit of an illegal arrest because of the lack of probable cause.  Alvarado raised these two issues for the first time in his motion for new trial; however, that alone is generally insufficient to preserve error unless the appellant did not have the opportunity present a timely objection.  *See Hardeman v. State*, 1 S.W.3d 689, 690 (Tex. Crim. App. 1999); *Issa v. State*, 826 S.W.2d 159, 161 (Tex. Crim. App. 1992) (en banc).  Alvarado does not assert that he was unable to timely present his objections.  He had ample opportunity to raise his Article 15.26 and probable cause issues to the trial court at the suppression hearing but he failed to do so.  *See Resendez*, 306 S.W.3d at 312 (observing that the purpose of requiring "timely" objections to the trial court is to give the trial court sufficient

---

[1] Alvarado does not challenge the admission of his non-custodial statement that was given to the State on May 12, 2015.  Alvarado's attorney informed the trial court, "We do not have any argument nor do we object to the introduction of the evidence or the affidavit that's dated May 12th."

7

opportunity to rule on the objection and to give the opposing party adequate time to respond to the objection). Therefore, because Alvarado did not timely present these issues to the trial court, they are not preserved for appellate review. *See* TEX. R. APP. P. 33.1; *Hardeman*, 1 S.W.3d at 690; *Issa*, 826 S.W.2d at 161.

### 2. Sub-Issue Two: Article 38.22

In his second sub-issue, Alvarado argues that his custodial statement was taken in violation of the procedural protections of Article 38.22. *See* TEX. CODE CRIM. PROC. ANN. art. 38.22. For a statement that is the result of a custodial interrogation to be admissible, the suspect must be given certain warnings and the warnings must be given before the statement was obtained. *See id.*; *Miranda v. Arizona*, 384 U.S. 436 (1966).

Alvarado's argument focuses on the uncontested fact that the person that issued him the required warnings was not the same person that conducted the interview and took Alvarado's statement. Investigator Adam Palmer testified that he read Alvarado the required statutory warnings and *Miranda* rights. He then left and Investigator Miguel Lopez took Alvarado's statement. It is undisputed that Lopez was not present when Palmer gave the required warnings to Alvarado. It is further undisputed that Lopez did not re-issue the required warnings before interviewing Alvarado. However, courts have previously concluded that "the absence of the officer (who initially gave the rights orally) at the time the statement is reduced to writing does not prevent its validity." *LaSalle v. State*, 923 S.W.2d 819, 822–24 (Tex. App.—Amarillo 1996, pet. ref'd) (citing *Lugo-Lugo v. State*, 650 S.W.2d 72, 82 (Tex. Crim. App. 1983)). We have recently addressed a similar argument in a factually similar scenario. *State v. Mata*, No. 13-17-00494-CR, 2019 WL 3023318, at *4 (Tex. App.—Corpus Christi–Edinburg July 11, 2019, pet. granted).

8

In *Mata*, the defendant was given the Article 38.22 warnings by Officer Chavez, but Chavez left because she was working on other parts of the investigation. The defendant was interviewed by Officer Lopez. Lopez was not present when the defendant was originally given the required warnings by Chavez. *See id.* However, Lopez verified that Mata had already been read his rights by Chavez. *Id.* Lopez proceeded to re-read Mata the statutory warnings and rights and obtained Mata's initials next to each warning prior to him signing the statement. *Id.* We concluded that "[b]ecause Mata was given his *Miranda* warnings prior to voluntarily signing the typed statement, we find that the statement does not violate article 38.22." *Id.* at *5.

Likewise, in the present case, Alvarado was given *Miranda* warnings prior to signing the statement. Alvarado initialed next to each of the rights and warnings and indicated that he understood his rights and wished to waive them. Because Alvarado was given the required warnings prior to signing the typed statement, we conclude that the statement did not violate Article 38.22. *See* Tex. Code Crim. Proc. Ann. art. 38.22; *LaSalle*, 923 S.W.2d at 822–24; *Lugo-Lugo*, 650 S.W.2d at 82; *see also Mata*, 2019 WL 3023318, at *4. We overrule Alvarado's second issue.

## IV. INSTRUCTION ON VOLUNTARINESS

In his third and fourth issues, Alvarado argues that the trial court erred by failing to instruct the jury on the voluntariness of his custodial statement and duress, respectively.

### A. Standard of Review and Applicable Law

In analyzing a jury charge issue, we first determine whether error exists. *See Ngo v. State*, 175 S.W.3d 738, 743 (Tex. Crim. App. 2005) (en banc); *Almanza v. State*, 686 S.W.2d 157, 171 (Tex. Crim. App. 1984) (op. on reh'g). "Only if we find error do we then

9

consider whether an objection to the charge was made and analyze for harm." *Tottenham v. State*, 285 S.W.3d 19, 30 (Tex. App.—Houston [1st Dist.] 2009, pet. ref'd). If the alleged jury charge error was properly preserved, reversal is required if it is shown that the error caused some harm. *Reeves v. State*, 420 S.W.3d 812, 816 (Tex. Crim. App. 2013). If the error is not properly preserved, then we will only reverse upon a showing that the alleged error caused egregious harm to the appellant. *Id.* "Egregious harm is such harm that a defendant has not had a fair and impartial trial." *See Ganther v. State*, 187 S.W.3d 641, 650 (Tex. App.—Houston [14th Dist.] 2006, pet. ref'd).

Under § 38.22 of the Texas Code of Criminal Procedure, a written statement made as the result of a custodial interrogation is not admissible against a defendant unless that statement meets certain criteria. *See* TEX. CODE CRIM. PROC. ANN. art. 38.22, § 2. In addition to being informed of his *Miranda* rights, § 38.22 requires that the defendant, "prior to and during the making of the statement, knowingly, intelligently, and voluntarily" waive his rights. *Id.*; *see Miranda*, 384 U.S. at 444. "A statement is involuntary . . . only if there was official, coercive conduct of such a nature that any statement obtained thereby was unlikely to have been the product of an essentially free and unconstrained choice by its maker." *Alvarado v. State*, 912 S.W.2d 199, 211 (Tex. Crim. App. 1995).

> Regarding jury instructions on voluntariness of a custodial statement:
>
> there are three types of instructions that relate to the taking of confessions: (1) a "general" Article 38.22, § 6 voluntariness instruction; (2) a "general" Article 38.22, § 7 warnings instruction (involving warnings given under § 2 and § 3); and (3) a "specific" Article 38.23(a) exclusionary-rule instruction.

*Oursbourn v. State*, 259 S.W.3d 159, 173 (Tex. Crim. App. 2008). A general § 6 voluntariness instruction simply asks the jury, "Do you believe beyond a reasonable doubt, that the defendant's statement was voluntarily made? If it was not, do not consider

10

the defendant's confession." *Id.* A § 7 instruction lists the requirements of 38.22 §§ 2 and 3 and asks the jury whether those requirements were met. *See id.* A specific 38.23 instruction is fact-based. *See id.* For example, "Do you believe that Officer Obie held a gun to the defendant's head to extract his statement? If so, do not consider the defendant's confession." *Id.* at 174.

There is a sequence of events that must occur before a party is entitled to a general voluntariness instruction:

> (1) a party notifies the trial judge that there is an issue about the voluntariness of the confession (or the trial judge raises the issue on his own); (2) the trial judge holds a hearing outside the presence of the jury; (3) the trial judge decides whether the confession was voluntary; (4) if the trial judge decides that the confession was voluntary, it will be admitted, and a party may offer evidence before the jury suggesting that the confession was not in fact voluntary; (5) *if such evidence is offered before the jury*, the trial judge shall give the jury a voluntariness instruction.

*Oursbourn*, 259 S.W.3d at 175 (emphasis added). Ultimately, a general voluntariness instruction is required only when a reasonable jury could conclude, based on disputed or undisputed evidence, that the statement was not made voluntarily. *See id.* at 181.

In contrast, the trial court is only required to submit a § 7 instruction or a specific 38.23 instruction if it is raised by the evidence, meaning there must be a "genuine factual dispute." *Id.* at 176.

Regarding a duress instruction, the applicable statute states, "[i]t is an affirmative defense to prosecution that the actor engaged in the proscribed conduct because he was compelled to do so by threat of imminent death or serious bodily injury to himself or another." *See* TEX. PENAL CODE ANN. § 8.05. To be entitled to an instruction on duress, "there must be some evidence of a specific, objective threat of death or serious bodily harm." *Edwards v. State*, 106 S.W.3d 833, 843 (Tex. App.—Dallas 2003, pet. ref'd)

11

## B. Voluntariness of Custodial Statement

Alvarado's proposed jury instruction, mirroring the language of Article 38.22 §§ 2 and 3, instructed that Alvarado's statement is inadmissible unless he was warned that

> (1) he has the right to remain silent and not make any statement at all and that any statement he makes may be used against him at his trial; (2) any statement he makes may be used as evidence against him in court; (3) he has the right to have a lawyer present to advise him prior to and during any questioning; (4) he may have his own lawyer, or, if he is unable to employ a lawyer, he has the right to have a lawyer appointed to advise him prior to and during any questioning; and (5) he has the right to terminate the interview or questioning at any time.

The proposed instruction then instructed the jury to ignore Alvarado's custodial statement unless it found that Alvarado was warned "in the respects just outlined."

This appears to be a general Article 38.22, § 7 warnings instruction. However, there is no genuine factual dispute regarding the pertinent facts. *See id.* It is uncontested that Palmer gave Alvarado the required warnings as enumerated in 38.22 §§ 2 and 3. It is undisputed that Lopez did not administer the same warnings to Alvarado before beginning his interview. It is undisputed that Alvarado signed and initialed the statement and warnings, indicating that he was given the appropriate warnings prior to making the statement. He also checked on the paper that he understood his rights and wished to waive them. Likewise, Alvarado makes no allegation of coercion or threat in obtaining his statement that would justify an instruction pursuant to Article 38.23. *See Oursbourn*, 259 S.W.3d. at 181 (holding that the trial court did not err in failing to give a specific Article 38.23(a) exclusionary-rule instruction on voluntariness because "there was no evidence of the type of police coercion or overreaching envisioned by the Supreme Court"). Therefore, the evidence did not necessitate an Article 38.22, § 7 or an Article 38.23 instruction, and the trial court did not err by failing to include such instructions.

12

Regarding a general Article 38.22, § 6 instruction, we note that Alvarado does not appear to complain on appeal about the trial court's failure to include a general voluntariness instruction. However, we conclude that a reasonable jury could not believe that Alvarado's statement was involuntary. There was nothing in the record that would suggest Alvarado did not make the statement voluntarily. As discussed above, it is undisputed that Alvarado was given the appropriate warnings and that Alvarado signed and initialed the statement and *Miranda* warnings indicating his intent to waive his rights. Alvarado complains that the officer that gave Alvarado the required warnings was not the same officer that took Alvarado's statement. However, none of the evidence raised by Alvarado suggested that his statement was not voluntary. *See Alvarado*, 912 S.W.2d at 211; *compare Oursbourn*, 259 S.W.3d at 181 (concluding that the appellant was entitled to a general voluntariness instruction because "there was evidence presented before the jury that appellant was in pain, was lied to about the evidence against him, and displayed characteristics of being in a vulnerable mental state due to his bipolar disorder"). Therefore, the trial court did not err in failing to include a general voluntariness instruction. We overrule Alvarado's third issue.

## C. Duress

Alvarado also argues he was entitled to a jury instruction on duress. However, Alvarado has not referenced, in the trial court or on appeal, that he engaged in the offense only because of a "specific, objective threat of death or serious bodily harm" that he or his family received. *Edwards*, 106 S.W.3d at 843. Alvarado generally averred that he was afraid of Salinas. He also testified that after the murder, Palacios pointed a gun at him and told him not to say anything. On the way home after the murder, Alvarado claims

13

that Palacios and Salinas told him "not to say anything because they would go after my family." Even assuming these were specific threats of imminent harm, these threats occurred after the murder had already occurred. Thus, Alvarado has not raised sufficient evidence that he only participated in the killing itself because of the threat of imminent harm. *See id.* The trial court did not err in failing to give a duress instruction. We overrule Alvarado's fourth issue.

## V. DOUBLE JEOPARDY

In his fifth issue, Alvarado argues that his convictions on all three counts constituted a double jeopardy violation.

Alvarado was convicted on three separate counts of capital murder. The State concedes that punishing Alvarado under all three counts constitutes a multiple-punishment double jeopardy violation in this case. The proper remedy for a multiple-punishment double jeopardy violation is to affirm the conviction for the most serious offense and vacate the other convictions. *See Bigon v. State,* 252 S.W.3d 360, 372 (Tex. Crim. App. 2008). The most serious offense is the one for which the greatest sentence was assessed. *See Ex parte Cavazos,* 203 S.W.3d 333, 338 (Tex. Crim. App. 2006). In this case, both Alvarado and the State agree that only count one should be retained. Therefore, we affirm Alvarado's conviction on count one for capital murder by killing more than one person in a single criminal transaction and reverse and render judgment vacating Alvarado's conviction on counts two and three.[2] We sustain Alvarado's fifth issue.

_____

[2] Alvarado asks to render judgments of acquittal as to counts two and three. However, the proper remedy in a multiple-punishment double jeopardy scenario is not to render acquittal, but rather to retain the most serious offense and vacate the others. *See Bigon v. State*, 252 S.W.3d 360, 372 (Tex. Crim. App. 2008).

14

## VI. Conclusion

We reverse and render judgment vacating counts two and three and affirm the remaining judgment as to count one for capital murder by killing more than one person in a single criminal transaction.

NORA L. LONGORIA
Justice

Do not publish.
Tex. R. App. P. 47.2(b).

Delivered and filed the
12th day of December, 2019.

15